**In re ADOPTION OF KLONOWSKI.**

[Cite as *In re Adoption of Klonowski* (1993), 87 Ohio App.3d 352.]

Court of Appeals of Ohio,
Stark County.

No. CA–8985.

Decided April 26, 1993.

*James Gregg* and *Scott A. Rosenthal,* for appellant.

*Stephen J. Harrison,* for appellees.

GWIN, Presiding Judge.

Appellant, William Shott, appeals from the judgment entered in the Stark County Court of Common Pleas, Probate Division, finding the consent of appellant, the putative father of the subject minor child, was not necessary in the instant adoption proceedings because he abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor for adoption, pursuant to R.C. 3107.07(B). Appellant assigns as error:

"ASSIGNMENT OF ERROR NO. 1

"The trial court's conclusion that appellant 'abandoned' appellee during her pregnancy pursuant to [R.C.] 3107.07(B) is unsupported by clear and convincing evidence and contrary to the manifest weight of the evidence.

"ASSIGNMENT OF ERROR NO. 2

"The trial court's conclusion that appellant's failure to volunteer support during appellee's pregnancy constituted abandonment is contrary to law, in that such failure, standing alone, cannot constitute abandonment pursuant to the facts *sub judice.*

"ASSIGNMENT OF ERROR NO. 3

"The trial court's consideration of the best interests of the child in determining whether appellant had abandoned appellee for purposes of waiving appellant's right to consent to an adoption was premature, irrelevant as a matter of law, and constituted an abuse of discretion."

On April 14, 1992, appellee, Sundae Klonowski, a twenty-year-old single mother, gave birth to the subject minor child. The newborn was a product of an

intimate affair between Klonowski and Shott, a forty-three-year-old married man.[1]

It appears from the record that Klonowski and Shott first met in late September 1990, at a bowling alley. Shott and Klonowski's father were members of the same bowling team. The relationship between the parties became intimate in March 1991, and continued thereafter until August 1991.

In June 1991, Shott separated from his wife for the purpose of obtaining a divorce, rented an apartment and gave an apartment key to Klonowski who regularly visited Shott. Shott testified that he proposed marriage to Klonowski and did in fact free himself for same by a decree of divorce entered March 6, 1992, in the Stark County Court of Common Pleas, Domestic Relations Division.

In August 1991, Klonowski terminated her relationship with Shott. Shott suspected Klonowski to be pregnant but she denied such a condition.

Despite Klonowski's desire to end the relationship, Shott frequently attempted to communicate with her. His telephone calls to Klonowski's parent's home ended only after her parents had their telephone number changed and unpublished.

In December 1991, Shott inquired whether Klonowski was pregnant. She again denied pregnancy. All further attempts to communicate and/or contact Klonowski were rebuffed.

By letter dated February 4, 1992, Klonowski, through counsel, first notified Shott that he was the putative father of his unborn child and his consent was sought for placement of the baby for adoption. The fourth paragraph of the letter stated:

"Finally, neither my client, nor her parents, wishes any direct contact or communication from you, and I am directing that any such communication be handled through me. Further, they have requested me to inform you that they wish you to please stay away from their home and Mrs. [sic] Klonowski's workplace, as you are not welcome there and your presence will be deemed to be harassment and unwanted interference."

Despite her counsel's warning, Shott attempted to deliver to Klonowski jewelry and a card for Valentine's Day. Shott's unrequited love was met with the following letter from Klonowski's attorney dated February 24, 1992:

"Despite her instructions, your client, Bill Shott, has trespassed and otherwise made himself further unwanted at my client's home. I am in possession of some

---

1. Klonowski admitted that Shott was the natural father of the minor child in a separate paternity action initiated by Shott on April 6, 1992. However, the paternity action was not resolved until after the instant determination by the probate court.

jewelry and greeting cards which are further unwanted. The only concern I have, at this time, is that your client does not understand the clear decision that Sundae has made in this matter. * * *

"Again, I request you inform your client as I have before, not to come around Sundae. Her tolerance of your client's unwanted contact is wearing thin, and she has been advised to contact the authorities."

On March 30, 1992, Shott filed an objection to the proposed adoption of the unborn baby and alleged he was the biological father. On April 6, Shott instituted a paternity action to legally establish his rights regarding the unborn child.

Following the birth of the child, a formal hearing was held wherein Klonowski testified that her medical expenses related to the pregnancy and birth were in excess of $10,000 and that she had no insurance to cover same. Shott admittedly did not pay any of those expenses, or offer to pay those expenses and was not requested to do so. Finally, Shott reaffirmed his desire to marry Klonowski and raise their child.

Upon hearing the evidence, the probate court determined that:

"Mr. Shott has failed to care for and support the minor and has abandoned the mother of the minor during her pregnancy and up to the time of the surrender of the minor. Now those words I've read are from the statute and are very harsh. They don't allow me for any departure from those words and I guess all I can say in tempering those words is that Mr. Shott believing that he was not wanted, apparently made no effort to offer any financial assistance, ah, not withstanding that he has a duty to offer, and based on that I'm making this ruling."

## I

Through his first assignment, Shott maintains the trial court's finding that he "abandoned" Klonowski during her pregnancy was not supported by clear and convincing evidence and was against the manifest weight of the evidence.

R.C. 3107.07(B) provides, *inter alia*, that the consent of the putative father of a minor child is not required if the court finds that he has abandoned the mother of the minor during her pregnancy and up until the time of her surrender of the minor. The burden of proving the abandonment is upon the natural mother who seeks to place the child for adoption without the putative father's consent. See *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919; *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 23 OBR 336, 492 N.E.2d 146; *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 18 OBR 419, 481 N.E.2d 613.

Webster's Dictionary commonly defines "abandon" as: to give up to the control or influence of another person or agent; to give up with the intent of never again claiming a right or interest in; to withdraw from often in the face of danger or encroachment; to withdraw protection, support, or help from; to cease from maintaining, practicing or using; to cease intending or attempting to perform; to desert; to forsake.

Black's Law Dictionary (6 Ed.1990) 2, defines "abandon" as: "[t]o desert, surrender, forsake or cede. To relinquish or give up with intent of never again resuming one's right or interest. To give up or to cease to use. To give up absolutely; to forsake entirely; to renounce utterly; to relinquish all connection with or concern in; to desert. It includes the intention and also external act by which it is carried into effect."

■ There being no legislative definition of "abandonment" we must determine in this appeal whether there was clear and convincing evidence before the probate court to support its conclusion that Shott abandoned Klonowski, as that term is commonly defined, during the term of her pregnancy and up to the time she placed the minor child for adoption. It is well settled that judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Upon review of all the evidence before the trial court and respecting its role in weighing the credibility of witnesses, we find the conclusion that Shott abandoned Klonowski during the term of her pregnancy to be against the manifest weight of the evidence and unsupported by clear and convincing evidence.

The record is replete with evidence tending to show that Shott did not abandon Klonowski. Instead, the evidence overwhelmingly demonstrates that it was Klonowski that forsook all contact with Shott. Shott's attempts to reconcile his relationship with Klonowski were met with resistance, threats, and deceit.

■ The evidence that Shott neither paid nor offered to pay Klonowski's medical bills associated with her pregnancy is likewise insufficient to establish that he abandoned the mother. No evidence exists that appellant was made aware of these medical bills or that Klonowski would have accepted his assistance. In fact, all indications were that Klonowski and her parents would have refused any assistance.

Klonowski effectively placed Shott in a "Catch–22" situation. Klonowski ordered Shott to stay away from her, threatened to have him arrested for trespassing, refused all gifts and advances, but later claims that his failure to offer support constitutes abandonment.

Accordingly, the trial court erred in its determination that Shott abandoned Klonowski during the term of her pregnancy and up to the time the child was placed for adoption, and we sustain this first assigned error.

## II

Through his second assigned error, Shott maintains the trial court's conclusion that appellant's failure to offer support during the term of Klonowski's pregnancy constituted abandonment was contrary to law. For the reasons stated under the first assignment, we sustain this assignment of error.

## III

Through his third and final assignment, Shott claims the trial court erred in considering the best interests of the child in determining whether he had abandoned Klonowski.

While reference is made in the transcript of the proceedings to the trial court's consideration of the best interest of the child, we are mindful that the trial court speaks only through its journal entry. Therefore, we presume the court did not in fact consider the child's best interest at this stage of the proceedings.

Accordingly, we overrule this final assigned error.

For the foregoing reasons, the judgment entered in the Stark County Court of Common Pleas, Probate Division, is hereby reversed, and we remand this cause to that court for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

SMART and WILLIAM B. HOFFMAN, JJ., concur.