**GLICK, Appellant,**

v.

**GLICK, Appellee; Commerce Exchange Bank, Appellant.**

[Cite as *Glick v. Glick* (1999), 133 Ohio App.3d 821.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 72353, 72359.

Decided June 21, 1999.

824

*Reid, Berry & Stanard* and *Margaret Dazdin Stanard,* for appellant.

*Stafford & Stafford Associates* and *John J. Dyer III,* for appellee.

*Kirk W. Roessler; Strachan, Green, Miller, Olender & Hobt* and *William R. Strachan; Stafford & Associate* and *Joseph G. Stafford,* for appellant Commerce Exchange Bank.

---

PATRICIA ANN BLACKMON, Judge.

In this consolidated appeal appellant Gregory Glick assigns eight errors challenging the domestic relations court's property division and spousal support awards, while Commerce Exchange Bank ("Commerce") assigns two errors challenging the court's order directing it to transfer approximately $32,000 from a savings account to appellee Dixie Glick. Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.

For purposes of appellant Commerce's assigned errors, these facts must be noted at the outset.

Gregory Glick filed for divorce on January 4, 1993. Dixie Glick counterclaimed, and the trial court issued various restraining orders against banks doing business with the Glicks. Commerce received the restraining order and submitted its answer claiming a priority interest in the bank account. At the trial of the matter, neither party appeared and the matter was dismissed. On October 11, 1994, Dixie Glick moved to reinstate the action. Commerce did not appear at the hearing and has maintained throughout that it had no notice that the proceedings had been reinstated. The case proceeded to trial, and the trial court divided the marital estate and granted a divorce to the parties on March 12, 1997, based on the facts contained herein.

Gregory Glick and Dixie Glick were married on October 4, 1975, and had two children, Anthony (born July 2, 1979) and Jeremy (born October 7, 1982). Gregory Glick, a forty-eight-year-old attorney and entrepreneur, earned over $180,000 per year. Prior to 1993, Gregory Glick was in the business of buying real estate and forming limited partnerships to manage the property for a fee. After a downturn in the real estate market, he became involved in business litigation, which included lease drafting and consultations, security work, and general business consulting. Dixie Glick, a forty-six-year-old housewife, was unemployed and had no income. She had not worked outside the home since 1979.

The evidence presented at the divorce hearing revealed that Gregory Glick had an account at Commerce Exchange Bank with a balance of $30,197. Although

the account bore his name, Glick maintained that the account actually belonged to a limited partnership known as Consource One Limited.[1] He also added that he used the account as collateral for a loan issued in his name. According to Glick, the loan was used for the partnership as well as for his own personal use. The loan agreement listed the savings account as collateral for the loan and provided:

"To secure the payment and performance of obligations incurred under this Note, Borrower grants Lender a security interest in, and pledges and assigns to Lender all or Borrower's rights, title, and interest, in all monies, instruments, savings, checking and other deposit accounts of Borrower's * * * that are now or in the future in Lender's custody or control."

In its journal entry of divorce, the trial court determined that the term of the marriage was from October 4, 1975 to February 20, 1997 (the date of the final divorce hearing). The trial court valued the marital home at $333,000 with a mortgage balance of $192,000. The trial court also found that the parties owned a small interest in a property management corporation known as Claymore Industries and had several accounts at Commerce Exchange Bank and Star Bank. In addition, Gregory Glick had partnership interests in several other real estate management corporations.

The court determined that the parties' funds at Commerce Exchange Bank, their interest in Claymore Properties, and the $30,000 in Star Bank Account No. 5701–7510–9 were marital funds. The court ordered Commerce Exchange Bank to release $32,000 from the Commerce Exchange Bank Account No. 01–3770 to Dixie Glick and ordered Star Bank to release $15,000 from Star Bank Account No. 5701–7510–9. Gregory Glick was awarded his interest in Claymore Properties and the balance of the money on deposit in Star Bank Account No. 5701–7510–9.

Gregory Glick was ordered to pay a total of $2,241.96 per month in child support and $3,570 per month in spousal support. Gregory Glick was also ordered to pay Dixie Glick the sum of $65,000 in attorney fees as additional spousal support. Dixie Glick was awarded the marital home and all the household furnishings.

The court also found that the parties' marital debts totalled $40,000. Gregory Glick was ordered to pay all marital debts and obligations incurred from October 4, 1975 to February 20, 1997. Gregory Glick was ordered to buy a term life insurance policy paying a death benefit of $300,000 with Dixie Glick as the sole beneficiary. He was also ordered to provide medical, dental, and optical insur-

---

1. Gregory Glick was the sole officer of Consource One Limited.

ance for the parties' minor children and to pay all medical, dental, hospitalization, prescription and psychiatric expenses for the children.

Gregory Glick's objections to the trial court's journal entry of divorce were overruled. The court also denied his motion to stay the divorce judgment. Thereafter, Dixie Glick filed a motion to show cause why Gregory Glick should not be held in contempt for failing to comply with the court's order to pay child support and spousal support. These appeals followed.

In his first and second assignments of error, Gregory Glick challenges the trial court's division of the parties' marital property. Specifically, he argues that the trial court's property division unduly favored Dixie Glick and left Gregory Glick with virtually no liquid assets. An equitable distribution of property need not necessarily be equal. *Winkler v. Winkler* (1997), 117 Ohio App.3d 247, 252, 690 N.E.2d 109, 112–113; *Leadingham v. Leadingham* (1997), 120 Ohio App.3d 496, 498, 698 N.E.2d 465, 465–466. The trial court is vested with broad discretion to make its determination of what constitutes an equitable property division. *Walker v. Walker* (1996), 112 Ohio App.3d 90, 93, 677 N.E.2d 1252, 1253–1254; *Neel v. Neel* (1996), 113 Ohio App.3d 24, 32, 680 N.E.2d 207, 212–213; *Vanderpool v. Vanderpool* (1997), 118 Ohio App.3d 876, 878, 694 N.E.2d 164, 165; *Carman v. Carman* (1996), 109 Ohio App.3d 698, 703, 672 N.E.2d 1093, 1096.

The relevant factors to be considered by the trial court in making a division of marital property are (1) the duration of the marriage, (2) the assets and liabilities of the spouses, (3) the desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage, (4) the liquidity of the property to be distributed, (5) the economic desirability of retaining intact an asset or an interest in an asset, (6) the tax consequences of the property division upon the respective awards to be made to each spouse, (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property, (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses, and (9) any other factor that the court expressly finds to be relevant and equitable. R.C. 3105.171(F)(1) through (9).

The trial court's journal entry explained the factors found to be relevant by the trial court. The trial court concluded that the parties were married over twenty-one years. The parties' assets totaled $245,313. The marital debts totaled $40,000. Custody of the children was awarded to Dixie Glick, in keeping with a March 15, 1996 agreement entered into by the parties. The court also found that "the voluminous testimony and presentation of the [Gregory Glick] leave a great deal to be desired regarding [Gregory Glick's] credibility." After considering Gregory Glick's demeanor, inflection, testimony, and actions throughout the

proceedings, the court concluded that Gregory Glick's statements about his income, debts and assets of the marriage were not credible. The court also found that Gregory Glick used the Commerce Bank funds for his own use, despite his claims at trial that the funds were assets of Consource One, one of the property management Corporations he was involved with. The court also found that Gregory Glick diverted funds from another partnership, Dixie Partners, and had depleted that partnership's assets. The court stated that "it would be totally inequitable to make an equal division of property due to [Gregory Glick's] misconduct, actions and [Gregory Glick's] ability to earn an income."

After reviewing the record, we find no evidence that the trial court abused its discretion in making its property division. The court's property division, though unequal, was nevertheless equitable under the circumstances of this case. Gregory Glick's first and second assignments of error are overruled.

■ In his third assignment of error, Gregory Glick argues that the trial court should have used a *de facto* termination date of the marriage in order to equitably divide the marital property. R.C. 3105.171(A)(2)(a). Generally, the terms of the marriage is the time period from the date of the marriage to the date of the final divorce hearing. However, R.C. 3105.171(A)(2)(b) provides as follows:

"If the court determines that the use of either or both [the date of the marriage and the date of the final divorce hearing] would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means that period of time between those dates selected and specified by the court."

■ In order to achieve an equitable distribution of property, the trial court must be allowed to use alternative valuation dates where reasonable under the particular facts and circumstances of the case. *Langer v. Langer* (Sept. 26, 1997), Montgomery App. No. 16243, unreported, 1997 WL 630027, appeal dismissed (1997), 80 Ohio St.3d 1473, 687 N.E.2d 470. "The determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent a demonstration of an abuse of discretion." *Gullia v. Gullia* (1994), 93 Ohio App.3d 653, 666, 639 N.E.2d 822, 830.

Gregory Glick argues that, after the parties separated on November 29, 1994, Dixie Glick accumulated a credit card debt of approximately $40,000 in an attempt to ruin Gregory Glick's good credit standing. However, Gregory Glick's argument ignores the fact that, during the parties' separation, he failed to make the court-ordered temporary support payments that would have allowed Dixie Glick to better meet her financial obligations. There is no evidence that the

expenditures by Dixie Glick were anything other than legitimate household and family expenditures. Absent any such evidence, we are unable to conclude that the trial court abused its discretion in using February 20, 1997 (the date of the final divorce hearing) as the termination date of the marriage. Gregory Glick's third assignment of error is overruled.

In his fourth assignment of error, Gregory Glick argues that the trial court erred by failing to characterize the Commerce funds as his separate property. Under R.C. 3105.171(B), a trial court must determine what property is marital and what property is separate. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992. That determination is a factual one which will not be reversed unless it is against the manifest weight of evidence. *Id.* See, also, *Marcum v. Marcum* (1996), 116 Ohio App.3d 606, 612, 688 N.E.2d 1085, 1088–1089.

Marital property is defined to include "all real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(3)(a)(i). Separate property includes property acquired by one spouse prior to the marriage and passive income and appreciation acquired from separate property by one spouse during the marriage. *Barkley* at 166, 694 N.E.2d at 996; R.C. 3105.171(A)(6)(a)(iii). Generally, under R.C. 3105.171(D), the court shall disburse a spouse's separate property to that spouse. If it chooses not to do so, the court shall issue findings of fact explaining the factors considered in making its determination not to disburse the spouse's separate property to that spouse. R.C. 3105.171(D).

The trial court concluded that Gregory Glick used the funds on deposit at Commerce Exchange Bank for his own use. Though Glick maintained that the funds belonged to Consource I Corporation, Dixie Glick introduced the promissory note for a commercial loan obtained by Gregory Glick. Although the note indicated that the loan was a commercial loan, Gregory Glick's accountant admitted that Gregory Glick agreed to pay the loan from his personal income and that, if he failed to pay, the account was to be liquidated for a personal loan of Glick's. Also, though he had worked for Gregory Glick for over ten years, Gregory Glick's accountant had no personal knowledge about the actual ownership of the Commerce bank account and had not been told about the loan until the day before he testified at the hearing.

The evidence presented at trial indicates that, despite Gregory Glick's claims to the contrary, the Commerce account was not a partnership account, but a personal one. The account was opened on March 3, 1992, during the term of the marriage. Accordingly, we conclude that the trial court's determination that the

account was marital property was not against the manifest weight of the evidence. Gregory Glick's fourth assignment of error is overruled.

In his fifth assignment of error, Gregory Glick argues that the trial court erred by ordering Gregory Glick to pay spousal support to Dixie Glick without considering the relevant statutory factors. Ohio courts have held that, when making an initial award of spousal support, the trial court must demonstrate that it considered all of the statutory factors. *Kucmanic v. Kucmanic* (1997), 119 Ohio App.3d 609, 613, 695 N.E.2d 1205, 1207–1208; *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph one of the syllabus. The court must also indicate the basis for its award in enough detail to enable a reviewing court to determine if the award is fair, equitable, and in accordance with the law. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 564, 615 N.E.2d 332, 334–335.

In its journal entry, the trial court made the following finding with respect to spousal support:

"The Court further finds that pursuant to Ohio Revised Code Section 3105.18, spousal support is appropriate and necessary. Spousal support is necessary to sustain the Defendant. The parties have a long-term marriage, during which the Defendant devoted herself to her family and assisted the Plaintiff with his various careers. The Plaintiff is a talented entrepreneur who can earn a substantial income, far in excess of the One Hundred Eighty Thousand Dollars ($180,000.00) per year which was proved at trial. The Court finds that Defendant Dixie S. Glick lacks marketable skills that can provide her with employment in the workforce which would allow her to provide for her necessities."

Our review of the record leads us to conclude that the trial court did not abuse its discretion in making its spousal support award. The evidence revealed that Dixie Glick lacked any employable skills, while Gregory Glick possessed substantial earning potential. Also, Dixie Glick had been out of the workforce for seventeen years while she committed herself to being a housewife and mother.

"It is reasonable for the spouse whose individual income-producing ability has been enhanced through the contributions of both spouses to assist the other spouse for a period following the divorce to enable that spouse to become self-supporting outside the marriage. If, because of the duration of the marriage, the age of the parties, and the roles played during the marriage, one spouse does not have the resources, ability, or potential to become self-supporting outside the marriage, it is reasonable that the other spouse provides support indefinitely." *Clark v. Joseph* (1994), 95 Ohio App.3d 207, 214, 642 N.E.2d 36, 40.

Because we conclude that the trial court did not abuse its discretion in making its spousal support award, we overrule Gregory Glick's fifth assignment of error.

Because Gregory Glick's sixth and seventh assignments of error both challenge the trial court's award of attorney fees, they will be discussed together. In his sixth assignment of error, Gregory Glick argues that the trial court abused its discretion by awarding Dixie Glick attorney fees and sustenance alimony. In his seventh assignment of error, Gregory Glick argues that the trial court erred in ordering him to pay towards Dixie Glick's attorney fees where she was awarded the bulk of the liquid marital assets. When awarding attorney fees, the trial court must consider the same factors considered when making an award of spousal support. *Williams v. Williams* (1996), 116 Ohio App.3d 320, 328, 688 N.E.2d 30, 35–36. Two important considerations are the financial ability of the payor spouse and whether a failure to award reasonable attorney fees will prevent either party from fully litigating his rights and adequately protecting his interests. *Id.; Neel*, 113 Ohio App.3d at 34, 680 N.E.2d at 213–214. An award of attorney fees will not be disturbed unless it constitutes an abuse of discretion or is unsupported by the weight of the evidence. *Id.; Williams*, 116 Ohio App.3d at 328, 688 N.E.2d at 35–36.

Gregory Glick raised no objection to the nature of the services performed or the amount billed for those services. As discussed above, since Dixie Glick had no income and Gregory Glick was earning at least $180,000 per year, it was clear that Gregory Glick was better prepared financially to pay the attorney fees. Also, due to her limited resources, Dixie Glick would not be able to fully litigate her claims without an award of attorney fees. Accordingly, we conclude that the trial court did not abuse its discretion by ordering Gregory Glick to pay towards Dixie Glick's attorney fees; assigned errors six and seven are overruled.

In his eighth assignment of error, Gregory Glick argues that the trial court erred in adopting a judgment entry that conflicted with the findings evidenced by the transcript of the February 20, 1997 final divorce hearing. It is well settled that a court speaks only through its journal entry. *Weinberger v. Weinberger* (1974), 43 Ohio App.2d 129, 133, 72 O.O.2d 325, 327, 334 N.E.2d 514, 517; *State ex rel Indus. Comm. v. Day* (1940), 136 Ohio St. 477, 479, 17 O.O. 86, 87, 26 N.E.2d 1014, 1015; *In re Adoption of Klonowski* (1993), 87 Ohio App.3d 352, 357, 622 N.E.2d 376, 379; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 142, 601 N.E.2d 515, 520–521; *Schenley v. Kauth* (1953), 160 Ohio St. 109, 111, 51 O.O. 30, 31, 113 N.E.2d 625, 626. Any alleged inconsistency between the comments made by the trial court at the final divorce hearing and the findings reached by the trial court in its final judgment entry would not constitute reversible error. See *Coffman v. Coffman* (1945), 76 Ohio App. 330, 333, 32 O.O. 51, 52, 62 N.E.2d 302, 303 ("We cannot look to the opinions of the court for refutation of the duly entered findings upon its journal"). Gregory Glick's eighth assignment of error is overruled.

■ In its first assignment of error, Commerce argues that the trial court lacked jurisdiction to order Commerce to disburse the funds in the account to Dixie Glick because the trial court failed to serve Commerce with Dixie Glick's motion to reinstate the action.

■ The trial court reinstated the Glicks' divorce action when it learned that the parties failed to appear at the original October 4, 1994 trial date because someone advised them that the matter had been continued. The trial court's docket indicates that notice of the motion for reinstatement was issued to the parties. Absent any evidence to the contrary, we must presume regularity in the proceedings below. "Attorneys are expected to keep themselves advised of the progress of their cases." *State Farm Mut. Auto. Ins. Co. v. Peller* (1989), 63 Ohio App.3d 357, 361, 578 N.E.2d 874, 876–877.

■ In its second assignment of error, Commerce argues that the trial court erred in ordering the transfer of the savings account to Dixie Glick free of its security interest. The bank argues that a perfected security interest survives the transfer of collateral as a matter of law.

However, R.C. 1309.04(K) provides that the law of secured transactions does not apply to a transfer of an interest in any deposit account. R.C. 1309.01(A)(5) defines a "deposit account" to include a savings account maintained with a bank. Accordingly, the bank could not have a perfected security interest in the Commerce savings account that would prevent the transfer of the account to Dixie Glick pursuant to the court's order. See, also, *Cissell v. First Natl. Bank of Cincinnati* (S.D.Ohio 1979), 476 F.Supp. 474, 490–491.

■ We also reject Commerce's argument that its possession of the account was sufficient to perfect its security interest. In *Cissell,* the court held that "possession" connotes a situation where the debtor's transfer of property to the creditor is "complete, unequivocal and exclusive of the pledgor's possession in his own right." *Id.* at 491. There is nothing in the record to indicate that Gregory Glick was prohibited from withdrawing the funds in the account. Accordingly, the bank's security interest was not perfected by its possession of the account. Accordingly, Commerce's second assignment of error is overruled.

The trial court's judgment is affirmed.

*Judgment affirmed.*

DYKE, P.J., and ROCCO, J., concur.