OPINION
This is an appeal and cross-appeal from the judgment entry and decree of divorce of the Hancock County Court of Common Pleas, Domestic Relations Division, in which the court ordered the division and distribution of the parties' marital and separate property and awarded spousal support.
Appellant/cross-appellee, Lawrence Pudlo, and appellee/cross-appellant, Sandra Pudlo, were married in 1973. Two emancipated children were born as issue of the marriage. On May 10, 1999, Sandra filed a complaint for divorce, and later, amended her complaint on September 10, 1999. The matter was heard on February 14, 16, and 22, 2000. On June 23, 2000, the trial court issued a decision and order setting forth findings and conclusions, and on September 14, 2000, the entry of divorce was journalized. Lawrence now appeals to this court and raises the following four assignments of error:
 The trial court erred in finding the gifts between the parties paid for with marital funds to be separate property.
 The trial court erred in the establishment of the duration of marriage.
 The trial court erred in the division of property regarding tax consequences and distribution of unevaluated personal property.
 The trial court erred in awarding appellee spousal support.
In Sandra's cross-appeal, she raises the following three cross-assignments of error:
 The trial court erred by failing to award appellee/cross-appellant $50,000 of the value of the parties' Florida real estate as her separate property.
 The trial court erred in failing to award appellee adequate spousal support.
 The trial court erred in disregarding the uncontradicted appraisal values of personal property placed in evidence by appellee.
We will first discuss Lawrence's assignments of error in the order asserted and together with Sandra's cross-assignments of error where appropriate. Turning to Lawrence's first assignment of error, Lawrence argues the trial court improperly found that the gifts of jewelry between the parties during their marriage were separate rather than marital property.
In its decision, the trial court states it applied the preponderance of evidence standard in determining the items of jewelry were unconditional gifts, thus awarding the jewelry to Sandra or Lawrence individually as her or his separate property. However, under R.C. 3105.171(A)(6)(a)(vii), a gift made after the date of the marriage will be classified as separate property only if there is clear and convincing evidence that such gift was given to only one spouse.
In reviewing the record, there was unequivocal testimony that the jewelry the parties purchased and gave to each other was intended as a gift. There was also testimony that nothing was said about it being given as conditional gifts. We view that to be clear and convincing evidence that this jewelry was given as a gift as required by R.C.3105.171(A)(6)(a)(vii). Based upon the record, we find the jewelry was properly awarded to Lawrence and Sandra as his or her separate property. Lawrence's first assignment of error is overruled.
In his second assignment of error, Lawrence asserts that the trial court abused its discretion in using the date of the final divorce hearing, February 22, 2000, as the termination date of the marriage. R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is usually the date of termination of the marriage. The trial court's decision whether or not to use an alternative date is subject to the discretion of the court and will not be reversed on appeal absent an abuse of discretion.Berish v. Berish (1982), 69 Ohio St.2d 318; Glick v. Glick (1999),133 Ohio App.3d 821, 828. A basis for using a de facto termination date can be established where one party leaves the marital home, the parties have separate bank accounts and business activities, the parties are separated for six years, and a substantial amount of assets are accumulated during the separation. See Gullia v. Gullia (1994),93 Ohio App.3d 653.
At the final hearing held in February 2000, the parties stipulated to the value of most of their marital property. The only items not stipulated which are at issue herein were the parties' checking and savings accounts. Lawrence argues that using the February 22 hearing date results in an inequity in the valuation and division of those accounts. Our review of the record reveals that although Sandra withdrew funds from the parties' joint accounts in January 1999, the parties did not separate until mid December 1999. In addition, the parties had a joint checking account into which Sandra continued to deposit funds, as well as had personal expenses paid out of this account, until in June 1999. From this account, Lawrence wrote checks for the monthly mortgage payments and household bills until the end of November when it was changed to his individual account. While it is true that the parties separated approximately two months before the final hearing date and Sandra spent money towards establishing a separate residence at that time, these facts would not necessarily be controlling so as to deprive the trial court of its discretion in determining that the termination of the marriage between the parties was the date of the final hearing. Moreover, it was not inequitable to do so in this case simply because the balance provided of Lawrence's checking account was as of December 31, 1999.
Therefore, upon reviewing the record, we are unable to conclude that the trial court abused its discretion in using the date of the final divorce hearing as the date of termination of the marriage. Accordingly, Lawrence's second assignment of error is overruled.
In his third assignment of error, Lawrence argues that the trial court erred in its division of marital property by requiring him to share the tax consequences on the award to Sandra made from his deferred funds, thereby rendering that division unequal and leaving the parties' financial affairs entangled. In order to equalize the division of marital property, the trial court ordered Lawrence to transfer $201,417.79 to Sandra by way of qualified domestic relations order, or any other necessary method, from either his Prudential IRA account or his GROB profit sharing account. The court, in its judgment entry, then stated that "[Lawrence] shall be responsible for one-half of any taxes and/or early withdrawal penalties as a result of this equalization."
R.C. 3105.171 governs the division of marital property and provides in pertinent part:
 (C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 R.C. 3105.171(F) sets forth nine factors to be considered, including the assets and liabilities of the spouses; the liquidity of the property; the tax consequences of the property division upon the respective awards to be made to each spouse; and any other factor the court may find relevant.
In the present case, the trial court clearly indicated in its findings and orders that the marital assets were to be distributed so that the parties "receive[d] a substantially equal dollar-for-dollar distribution" of the marital assets. Indeed, the court does appear to comply with the statutory mandates of R.C. 3105.171 as best it could to equalize the distribution of the marital assets and liabilities while assuring that both parties share equally in any tax consequences and penalties incurred with the transfer. Given that immediate transfer to Sandra pursuant to the court's order, we fail to see a basis for Lawrence's argument that this has created a situation where the parties' affairs are not concluded.
Also, under this assignment of error, Lawrence claims that it was error for the trial court to award the parties' household goods and personal property without having determined their value. In the event this court should determine that valuation is necessary, Sandra argues in her third cross-assignment of error that the trial court erred by not adopting her appraisal evidence as to the property's value.
As noted previously, R.C. 3105.171(C)(1) requires that the "division of marital property shall be equal" except where equal division would be inequitable. In reviewing the trial court's division, we are mindful that rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances. Baker v. Baker (1992),83 Ohio App.3d 700, 702, citing Briganti v. Briganti (1984),9 Ohio St.3d 220, 221-222. Thus, while specific valuation of contested items of property is necessary to facilitate appellate review, valuation is not as essential where the property is distributed pursuant to the parties' prior agreement. Goode v. Goode (1991), 70 Ohio App.3d 125,132.
In the present case, the trial court awarded each party the household goods and other personal property currently in his or her possession, except that Lawrence is to transfer the portable bar, wedding dress, and copper and brass bicycle sculptures. The record reveals that the parties had drawn an agreed list of personal property division pursuant to which Sandra removed items from the marital home. Insofar as the trial court did know what items were divided and given the conflict in evidence concerning the values delineated in the list and as to the appraisal of certain items, appellant has not demonstrated that the trial court's failure to determine value rendered the property division inequitable. Accordingly, Lawrence's third assignment of error is overruled, and Sandra's third cross-assignment of error is rendered moot.
As to Lawrence's fourth assignment of error concerning the issue of spousal support, he first argues that spousal support was not appropriate since Sandra had been earning in excess of $70,000 for the preceding year, an amount exceeding her expenses. Second, Lawrence argues that the trial court should have taken into consideration any income that may be derived from the distribution of assets to Sandra. On the other hand, Sandra argues in her second cross-assignment of error that the award of spousal support is inadequate in view of the factors enumerated in R.C.3105.18.
The factors that a trial court must consider in determining (1) whether spousal support is appropriate and reasonable, (2) the nature, amount and terms of payment of spousal support, and (3) the duration of spousal support are set forth in R.C. 3105.18(C)(1). Among these factors are the parties' income, including income derived from property divided, the relative earning abilities of the parties, the retirement benefits of the parties, the duration of the marriage, and the standard of living of the parties established during the marriage. R.C. 3105.18(C)(1). A reviewing court should reverse a trial court's award of spousal support only upon a showing of an abuse of discretion. See Booth v. Booth (1989),44 Ohio St.3d 142.
In the case at bar, the trial court found Sandra became employed as a sales representative for Prudential Insurance Company of America in April 1998 at the Findlay office. In May 1999, Sandra started her own office in Marion, Ohio. Although Sandra did earn yearly income in excess of $70,000 in 1999, the trial court also found her projected annual income based upon financial information presented was $26,500 for the year 2000 and the foreseeable future, with a net business income of $11,500 per year. The evidence was that Sandra had received company assistance and such assistance would cease in April 2000. That being the case, the district manager indicated that the projected income was reasonable.
The record indicates that the trial court also evaluated Sandra's monthly living expenses before making its decision. The court specifically found Sandra's monthly living expenses to be $3,200 after determining it was not appropriate to reimburse her for mortgage expenses relating to the Florida property where her parents live, even though it was awarded to her as part of the property distribution.
As marketing director at GROB Systems, Inc., Lawrence had 1999 W-2 income of $162,000. The trial court recognized that Lawrence will be able to receive additional retirement benefits in the future in such employment as opposed to Sandra who has limited retirement benefits, and that the parties enjoyed a high standard of living during the latter part of the marital relationship.
Based on the above findings of fact, the trial court ordered Lawrence to pay $2,000 per month in spousal support to Sandra for forty-eight months. Considering the large disparity in income, the relative income potential of the parties, Sandra's additional needs, and the parties' above average lifestyle, we cannot find that the trial court abused its discretion in ordering such an award and then retaining continuing jurisdiction to modify the payment of spousal support should a substantial change of circumstances occur. Moreover, our review of the trial court's decision clearly shows that it considered the factors listed in R.C. 3105.18. Although income derived from divided property is a factor the court must consider in determining spousal support, see R.C. 3105.18(C)(1)(a), the trial court did not abuse its discretion, as argued by Lawrence, by not specifically reducing his spousal support obligation since the bulk of the property division Sandra received currently involves funds in retirement or profit sharing funds. Accordingly, Lawrence's fourth assignment of error and Sandra's second cross-assignment of error are both overruled.
Lastly, as to Sandra's first cross-assignment of error, she contends that the trial court erred when it failed to credit her with $50,000 of the equity in the Florida real estate awarded to her. Sandra claimed this was her separate property because it was an "early inheritance" from her parents in connection with the purchase and could be successfully traced.
The term "separate property" is defined in R.C. 3105.171(A)(6)(a) as:
 (i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;
 ***
 (vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
When addressing whether Sandra should be given credit for the entire $50,000, the trial court considered R.C.3105.171(A)(6)(a)(vii). Whether one considers the money as either advances on inheritance or as gifts is of no consequence here because an advancement is itself a gift. See 1 Merrick-Rippner, Ohio Probate Law (5 Ed. 1997) 319, Section 20.1.[1] Accordingly, the issue for this court is whether there was clear and convincing evidence that the $50,000 was ultimately a gift only to Sandra and not to her husband.
In this case, the record indicates and the trial court found "these funds were received by both [Sandra and Lawrence] in separate checks made payable to each by both [Sandra's] mother and father." In 1993, each of Sandra's parents wrote two $10,000 checks, one of the checks to Sandra and one to Lawrence. During this time, the parties were in the process of building a house on the Florida lot. The testimony of both parties was that in connection with the transfer of the money to the parties, they entered into agreement whereby the Florida property would be used by Sandra's parents. Her parents have lived in the residence since September 1993, during which time the parties have paid the monthly mortgage payment, the insurance and the real estate taxes. The second transfer occurred in 1994; $10,000 of her parent's money was transferred, but the parties' testimony is conflicting as to whether one $10,000 check had been written to Sandra or whether her parents wrote a $5,000 check payable to each of the parties.
Although the testimony of both parties suggests that these monies were apparently contemplated by Sandra's parents as advances on inheritance, the testimony of both parties also demonstrates there was an agreement among the parties and Sandra's parents that the money was transferred in exchange for her parents' having use of a residence in Florida. In fact, the evidence indicated that her parents would be allowed to live in the residence until their death. Further, although Sandra claims that her parents wrote the checks to both parties only so that gift taxes could be avoided, the agreement between Sandra's parents and the parties in connection with the purchase of the Florida residence was inextricably intertwined with the money transferred to the parties from Sandra's parents. Given the testimony outlining the surrounding circumstances of the monies transferred from Sandra's parents to the parties and the fact that separate checks were written by her parents, we find the trial court could have reasonably determined that the $50,000 was not given to only Sandra. See R.C. 3105.171(A)(6)(a)(vii).
Further, in the characterization of the monies at issue as marital property, the trial court also apparently relied on its factual finding that these monies were converted into marital property when such funds were commingled with other marital funds to purchase the Florida residence, coupled with the parties' financial history since that purchase. R.C. 3105.171(A)(6)(b) states that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." The record establishes that the four separate checks totaling $40,000 from Sandra's parents in 1993 were deposited into a joint checking account in which the proceeds of $41,000 from the sale of the parties' house had previously been deposited and then $47,000 used as a down payment for the Florida property. The record also establishes that the parties consummated this purchase in September 1993, but they did not receive the second $10,000 transfer of money until 1994. Given the evidence of the monies commingled and otherwise spent by the parties, as well as the evidence regarding the chronology of the transfers, the record does not adequately demonstrate that the monies in question could be traced and separated. Consequently, the trial court was not required to give a credit of $50,000 equity to Sandra as separate property. Sandra's first cross-assignment of error is overruled.
For the foregoing reasons, the judgment of the Hancock County Court of Common Pleas, Division of Domestic Relations, is affirmed.
 _____________ SHAW, J.
BRYANT and HADLEY, JJ., concur.
[1] An advancement is defined therein as:
An irrevocable gift made by a person during lifetime to an heir, by way of anticipation of the whole or part of the estate which the heir would receive in the event of the person's death intestate. Thus, an advancement is simply an anticipation of the distribution which the law would make at the death of the donor intestate, permitting an heir to take and enjoy property in advance of the time when he would probably receive the same on final distribution of an estate. Id. (Footnotes omitted.)