DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division. Because we cannot discern the basis of the trial court's judgment denying appellant's request for spousal support, we reverse.
Appellant, Leslie A. Cooper, and appellee, Robert J. Cooper ("Jerry") were married on June 17, 1978. No children were born of this marriage. On January 19, 2000, Leslie filed a complaint asking for a divorce on the ground of incompatibility. Jerry filed a counterclaim, also requesting a divorce on the basis of incompatibility.
Prior to a trial on all issues raised by the parties, Leslie and Jerry stipulated to an equal division of the marital property. As part of that division, Jerry agreed to pay Leslie $29,793 at a rate of $600 per month, commencing on December 1, 2000. Additionally, Leslie was to receive the almost $60,000 in net proceeds from the sale of the marital residence, for a total of almost $90,000 in cash. In return, Leslie agreed to forgo claiming any interest in Jerry's 401K and Thrift and Investment Plan with Norfolk and Southern Railway Company, with a combined value of more than $140,000. She did request and receive fifty percent of Jerry's Norfolk and Southern pension and fifty percent of his Tier II Retirement Plan Pension. All marital debt was paid from the proceeds obtained from the sale of the marital residence.
The contested questions at the trial level that are relevant to this appeal were Leslie's request for reasonable spousal support and for attorney fees. The facts applicable to these issues are as follows.
The record reveals that the parties' lifestyle during this twenty-two year marriage was that of an "average middle class" family. At the time of the divorce hearing Leslie was fifty years old. Leslie, who has a college degree in business administration and is a certified public accountant, is employed as a controller. As of January 1, 2000, she earned $45,000 per year. The highest pay she made prior to that date was $35,000. The benefits provided in Leslie's prior jobs did not include a pension plan or retirement fund. Nevertheless, her current employer offers a 401K plan to which Leslie contributes five percent of her earnings. She had $2,600 in her 401K at the time of the trial of this matter. Leslie has a health plan; her share of the cost of this benefit is $42.50 per month. She plans on investing the $60,000 received from the sale of the marital residence.
With regard to monthly expenses, Leslie rents a townhouse for approximately $600 per month. Her total of monthly expenses, as listed in her Schedule III, is $2,180 per month and includes such items as $80 per month for gifts, $115 per month for hair and nail care and $110 per month for veterinary care for one dog. She claimed that her monthly expenses exceeded her income by $100. Leslie maintained that she owed $4,364 in outstanding attorney fees.
Leslie suffers from migraine headaches, having a severe attack approximately once per month. In addition, she has hypertension, or high blood pressure, which is controlled by medication. Neither of these conditions is incapacitating as related to her employment. Leslie also has a kidney disease that has not, at this point in time, affected her ability to work. Nonetheless, the disease could eventually affect her kidney function, requiring dialysis or a kidney transplant.
At the time of the divorce proceeding, Jerry was fifty-six years old. His primary employment was as a yardmaster for Norfolk and Southern Railway Company. He also had a job with United Transportation Union. His projected combined pay for the year 2000 was $81,000, the highest that he ever earned. Jerry attributed the increase in wages to the amount of overtime that he worked after Leslie moved from the marital residence in January 2000. His combined earnings in 1999 were approximately $63,000. Jerry claimed that due to a "consolidation of the seniority roster," he would not be eligible for the same amount of overtime.
Jerry's expenses are listed as over $4,000 per month. This figure includes a monthly rent of $875, the $600 payment to Leslie (which did not take effect until December 2000) and a $72 payment for the support of a "handicapped daughter." Jerry is current in the payment of his attorney fees, but owes his mother money on the $1,500 loan she provided for the payment of his attorney's retainer.
Jerry testified that he has degenerative arthritis in both knees and will, at some point in the near future, undergo knee replacement surgery. According to Jerry, he would then be unable to work for the railroad. He also has an anxiety/stress disorder, which, on at least four occasions, caused him to experience symptoms similar to a heart attack.
The trial court denied Leslie's request for spousal support, holding, in pertinent part:
 "Having considered all of the foregoing factors [in R.C. 3105.18(C)], the Court finds that an award of spousal support would not be reasonable or appropriate under the circumstances. The Plaintiff's expressed financial need for spousal support is neither `urgent or essential,' Kunkle v. Kunkle, 51 Ohio St.3d 64, 68, 554 N.E.2d 83 (1990); the Plaintiff has demonstrated that she `has the resources, ability and potential to be self-supporting.' Id. at paragraph one of the syllabus." (Emphasis added.)
Additionally, in considering the duration of the marriage and the potential for Leslie's kidney disease impacting her ability to earn her current income, the trial court reserved jurisdiction over the issue of spousal support for a period of five years. Finally, the court granted Leslie $1,000 in attorney fees in the form of a lump sum spousal support award.
In her appeal of that judgment, Leslie's assignments of error read:
 "The trial court abused its discretion and erred to the prejudice of Appellant when it failed to award her spousal support."
 "The trial court abused its discretion and erred to the prejudice of Appellant when it awarded only $1,000 in attorney fees."
The essence of Leslie's argument under her first assignment of error is that the trial court abused its discretion in denying her request for spousal support based on the fact that she did not demonstrate an "urgent or essential [financial] need" and because she is self-supporting. Appellant cites to several particulars which she claims support this argument.
Appellate review of a court's decision to grant or deny requested spousal support is limited to a determination of whether the court abused its discretion. Bowen v. Bowen (1999), 132 Ohio App.3d 616, 626. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude in reaching its judgment was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Currently, in deciding whether spousal support is "appropriate and reasonable" and the "nature, and amount, and terms of payment, and duration of spousal support," the trial court must consider all of the fourteen factors found in R.C. 3105.18(C)(1)[1]. Schultz v. Schultz
(1996), 110 Ohio App.3d 715, 724. The trial court's judgment must contain sufficient detail to enable a reviewing court to determine that the spousal support award is "fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 97; Glick v. Glick
(1999), 133 Ohio App.3d 821, 830.
In applying this law, we first turn to the question of whether the trial court impermissibly decided to deny Leslie's request for spousal support on the ground that it was not "necessary."
Prior to 1991, R.C. 3105.18(B) required a court to determine whether alimony/spousal support was necessary. On January 1, 1991, the legislative changes to R.C. 3105.18 became effective. Significantly, with respect to spousal support determinations, the amended statute substituted the phrase "appropriate and reasonable" for "necessary." The appropriate and reasonable standard is broader than the necessary standard that was applicable prior to the amendment of R.C. 3105.18. Collins v.Collins (July 18, 1995), Franklin App. No. 95APF01-14, unreported. See, also, Taylor v. Taylor (Dec. 23, 1998), Summit App. No. 18424, unreported (defining the words "appropriate" and "necessary"). Thus, while the "need" for spousal support may be a factor in a given case, Matic v.Matic (July 27, 2001), Geauga App. No. 2000-G-2266, unreported; Davis v.Davis (Mar. 31, 2000), Portage App. No. 980P-0122, a court cannot deny a request for spousal support solely on the basis that it is not "needed" or "necessary." Matic, supra; Davis, supra.
In his decision in the present case, the trial judge set forth the correct standard and stated that he had "considered all statutory factors." He then separately discussed the factors that would favor an award of spousal support or militate against such an award. However, he then cited to that portion of Kunkle v. Kunkle, supra, requiring financial need for a spousal support award. As discussed infra, this holding in Kunkle was superseded by the amendments to R.C. 3105.18.Haynes v. Haynes (Mar. 4, 1998), Summit App. No. 18487, unreported. See, also, McConnell v. McConnell (Feb. 3, 2000) Cuyahoga App. No. 74974, unreported.
This review of the court's decision compels us to conclude that despite the fact that the trial court recited the proper standard in this case and discussed the factors in R.C. 3105.18(C)(1), its judgment regarding spousal support hinges upon a perceived lack of necessity for support. Our conclusion is bolstered by the fact that the court determined that some of Leslie's expenses were not "necessary." Where, as here, the denial of a request for spousal support is apparently due to the application of a standard that is higher than that mandated by statute, the error in doing so cannot be deemed harmless. Cf. Houck v. Houck
(Dec. 26, 1997), Trumbull App. No. 97-T-0025, unreported (Because the grant of a request for spousal support on the basis that it is "necessary," rather than "reasonable," requires the requesting party to satisfy a higher standard, such error is not prejudicial.). Therefore, the trial court did abuse its discretion in the manner in which it determined that Leslie was not entitled to spousal support. Accordingly, Leslie's first assignment of error is found well-taken.
Because the trial judge awarded Leslie $1,000 in attorney fees as and for spousal support, he may reconsider this amount upon remand. Consequently, Leslie's second assignment of error is not ripe for review.
On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, on the issue of spousal support is reversed. The question of the amount of attorney fees awarded to Leslie A. Cooper is rendered moot. The remainder of the domestic relations court's judgment is not challenged and is, therefore, affirmed. This cause is remanded to that court for further proceedings consistent with this judgment. Robert J. Cooper is ordered to pay the costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________ Melvin L. Resnick, Judge
Peter M. Handwork, J. and Richard W. Knepper, J. CONCUR.
[1] These factors are:
 "(a) The income of the parties from all sources, including, but not limited to, income derived from property divided * * * under R.C. 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. 3105.18(C).