DECISION AND JUDGMENT ENTRY
This is an appeal and cross-appeal from a judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce and ordered the division of marital property and payment of spousal support. For the reasons that follow, this court affirms the judgment of the trial court.
The undisputed facts that are relevant to the issues raised on appeal are as follows. The parties were married in 1967 and had four children, all of whom were emancipated at the time appellee filed a complaint for divorce on September 4, 1997. During the marriage, appellant/cross-appellee Don Detlef ("appellant") worked for Conrail Railroad for ten years. He also owned Detlef Insurance Agency. Appellee/cross-appellant Dena Detleff ("appellee") worked occasionally at the insurance agency. Appellee also worked for awhile selling real estate but at the time of the divorce was working a minimum wage job at a fast food restaurant.
Final hearing on the divorce was held on August 11 and September 29, 1999. The testimony of the parties and other witnesses will be summarized where relevant to each of the assignments of error below. On April 11, 2000, the trial court filed its judgment entry of divorce in which the court made findings on the issues of financial misconduct, the division of the marital estate, spousal support and attorney fees.
We note that each party claimed the other had committed acts which constituted financial misconduct. As to appellee's actions, the parties stipulated that she withdrew $15,000 from a joint bank account at or about the time the complaint for divorce was filed. The trial court accordingly deemed her to have received $15,000 from the marital estate.
The trial court further found that appellant's "financial misconduct was considerably more notorious." The court noted that it had considered appellant's "evasiveness, his belligerence, and his selfishness," and stated that it could not find appellant to be a credible witness. The trial court found that in September 1997, appellant began withholding cash deposits made to his insurance agency and that he kept no records or accounting as to the exact amount that was withheld from deposits. The trial court further considered the testimony of the accountant who had examined the financial records for appellant's business and who found that between August and December 1997, the business had received approximately $250,000 in funds but that only $75,000 was deposited into the agency's bank accounts. Based upon a comparison of average monthly cash deposits prior to the divorce action being filed with the average monthly deposits between September 1997 and February 1998, the trial court found that there appeared to be a significant sum of money that had not been deposited into the agency account during that post-filing period. The trial court further noted a significant increase in the amount of cash deposits to appellant's bank accounts in a three-month period during 1998. The trial court concluded that appellant had created a situation that made it impossible to calculate precisely the amount of funds withheld from the agency but that the amount withheld appeared to be at least $78,543. The trial court further concluded that appellant was guilty of financial misconduct within the meaning of R.C.3105.171(E)(3).
As to the marital property, the trial court divided the assets as follows:
Appellee
Joint C.D. accounts (5) $167,590.24 Joint account 4.81 Individual IRA accounts (2) 14,423.77 Detlef Insurance CDs (2) 246,565.74 Individual C.D. 10,000.00
Appellant
Individual account $4.25 Individual IRA 21,296.41 Commercial real property 24,000.00 Marital home 33,000.00 Stock 5,500.00 IRA 24,661.60 Detlef Insurance Agency 70,100.00 Vehicles (4) 5,500.00 Individual accounts (2) 120,676.65 Joint C.D. account 10,000.00 Joint savings account 5,302.28
In addition to the above, the trial court's allocation included items of personal property. Appellee's share of the marital assets also included the $15,000 she withdrew from the parties' joint account prior to filing for divorce. Appellant was awarded unspecified marital assets which the trial court valued at $122,341 and his interest in another insurance business, Walbridge Lake Insurance Company. The trial court also ordered a Qualified Domestic Relations Order entered pursuant to which appellee would be entitled to one-half the marital portion of one of appellant's two railroad retirement benefit plans. Pursuant to the trial court's division, appellee's share of the marital estate totaled $453,584.56 and appellant's share totaled $443,012.19.
The trial court further ordered appellant to pay spousal support in the amount of $2,000 per month for twelve months and $1,750 per month thereafter until appellee's death, remarriage, cohabitation with another as if married, or further order of the court. Additionally, the trial court found that some of the attorney fees and expenses appellee incurred were a result of appellant's "belligerent and obstructive conduct," and ordered appellant to pay appellee partial attorney fees in the amount of $4,500, together with other costs in the amount of $535, within sixty days of the filing of the final judgment entry of divorce.
It is from that judgment that the parties have filed their appeal and cross-appeal. The assignments of error raised in the two appeals will be addressed separately.
 Appellant's Appeal
Appellant sets forth the following assignments of error:
"ASSIGNMENT OF ERROR NUMBER ONE
 "THE COURT ERRED IN ITS FINAL JUDGMENT OF DIVORCE IN RENDERING A DIVISION OF PROPERTY, AS STATED IN THE FINAL DECREE OF DIVORCE AS SAID DIVISION WAS INEQUITABLE TO APPELLANT AND CONSTITUTED AN ABUSE OF DISCRETION.
"ASSIGNMENT OF ERROR NUMBER TWO
 "THE COURT ERRED IN NOT EVALUATING APPELLANT'S OR APPELLEE'S PENSION BENEFITS IN DETERMINING THE ALLOCATION OF MARITAL ASSETS.
"ASSIGNMENT OF ERROR NUMBER THREE
 "THE COURT ERRED IN PERMITTING APPELLEE'S EXPERT (EULAN TUCKER) TO RENDER AN OPINION AS TO THE VALUE OF APPELLANT'S BUSINESS AND FURTHER RENDER AN OPINION AS TO THE FUNDS TAKEN OUT OF THE BUSINESS BY APPELLANT (I.E., THE QUESTION OF ALLEGED DEPLETION OF ASSETS ON THE FINANCIAL MISCONDUCT ISSUE).
"ASSIGNMENT OF ERROR NUMBER FOUR
 "THE COURT ERRED BY FINDING APPELLANT GUILTY OF FINANCIAL MISCONDUCT WITH OR WITHOUT FINDING PROOF OF SAID ALLEGED FINANCIAL CONDUCT BY CLEAR AND CONVINCING EVIDENCE.
"ASSIGNMENT OF ERROR NUMBER FIVE
 "THE COURT ERRED BY NOT FINDING APPELLEE GUILTY OF FINANCIAL MISCONDUCT AND/OR PENALIZING APPELLEE IN PROPORTION TO THE AMOUNT SHE MISAPPROPRIATED.
"ASSIGNMENT OF ERROR NUMBER SIX
 "THE COURT ERRED IN ITS DECISION AND ORDER IN THIS CASE BY FAILING TO TAKE IN ACCOUNT ALL FEDERAL AND STATE INCOME TAX IMPLICATIONS AS TO APPELLANT AND APPELLEE IN THIS MATTER IN ITS ORDER ALLOCATING PROPERTY BETWEEN SAID PARTIES.
"ASSIGNMENT OF ERROR NUMBER SEVEN
 "THE COURT ERRED IN ITS VALUATION OF APPELLANT'S INSURANCE BUSINESS AS BEING $70,000.00.
"ASSIGNMENT OF ERROR NUMBER EIGHT
 "THE COURT ERRED IN NOT DETERMINING THERE WAS SEPARATE PROPERTY.
"ASSIGNMENT OF ERROR NUMBER NINE
 THE COURT ERRED IN GRANTING APPELLEE SPOUSAL SUPPORT (BOTH AS TO THE TOTAL AMOUNT OF THE AWARD AND TIME).
"ASSIGNMENT OF ERROR NUMBER TEN
 "THE COURT ERRED IN PERMITTING MR. PETER BROWN OF WELLES BOWEN TO TESTIFY AS AN EXPERT WITNESS ON THE VALUATION OF APPELLANT'S BUSINESS.
"ASSIGNMENT OF ERROR NUMBER ELEVEN
 "THE COURT ERRED IN REQUIRING APPELLANT TO PAY ANY ATTORNEY FEES FOR THE APPELLEE."
In his first assignment of error, appellant asserts that there was no justifiable basis for the trial court to deviate from an even split of the assets and that the trial court's award of what he calculates as fifty-eight percent of the marital assets to appellee constituted an abuse of discretion. Appellant also argues that he was not guilty of financial misconduct and the trial court should not have used that finding to justify granting a greater amount of the assets to appellee, and that appellee's financial misconduct should have negated such a finding as to his conduct. Finally, appellant argues that the property award was an abuse of discretion in light of the award of spousal support.
This court may not reverse the trial court's determination as to matters involving the division of property absent an affirmative showing of an abuse of discretion. Cherry v. Cherry (1981), 66 Ohio St.2d 348;Berish v. Berish (1982), 69 Ohio St.2d 318; Worthington v. Worthington
(1986), 21 Ohio St.3d 73 . An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1984), 5 Ohio St.3d 217, 219. In its consideration, a reviewing court should not substitute its judgment for that of the trial court. Bucklesv. Buckles (1988), 46 Ohio App.3d 102, 110.
As to appellant's first argument, we find after a review of the foregoing, as well as the factors set forth in R.C. 3105.171(F), that while the trial court's division of marital property was not equal it was quite equitable and certainly not unreasonable, arbitrary or unconscionable.
Appellant states that the trial court used a "financial misconduct approach" to make the division of marital property. We find no reference, however, to financial misconduct in that portion of the trial court's judgment entry relating to the property division. In determining the division of marital property, the trial court did include in appellant's share of the marital assets the $78,543 which the court found appellant withheld from the agency's cash receipts. This finding is not an abuse of discretion. As to appellant's claim that the finding of financial misconduct was erroneous, this argument will be considered fully under appellant's fourth assignment of error.
As to appellant's claim that the property award was an abuse of discretion in light of the award of spousal support, this argument is without merit. R.C. 3105.171(C)(3) and R.C. 3105.18(B) both specify that a trial court is to determine the division or disbursement of marital property before awarding reasonable spousal support to either party and without regard to any spousal support awarded. See Krisher v. Krisher
(1992) 82 Ohio App.3d 159.
Based on the foregoing, appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the trial court erred by not evaluating either his or appellee's pension benefits when determining the allocation of marital assets. Appellant is correct in stating that the trial court did not evaluate either party's pension benefits.
Since the trial court retained jurisdiction to modify spousal support as to amount and duration, when appellee's share of appellant's retirement benefits becomes payable an adjustment could be made as to spousal support to offset the pension if the trial court finds such a modification appropriate. Because the door has been left open for such a modification, it does not appear that appellant has been prejudiced by the trial court's handling of the pension.
Appellant asserts that the trial court erred by not determining, "through customary and accepted methods," the exact value of the portion of his pension that the court awarded to appellee. Appellant does not explain exactly what the "customary and accepted methods" might be. A review of the final judgment entry shows that, while the trial court did not specify dollar amounts, it set forth clear instructions as to how appellant's Tier II benefits were to be divided between the parties. The trial court stated:
 "* * * a Qualified Domestic Relations Order should be entered pursuant to which [appellee] would be entitled to one-half of the marital portion of the Tier II benefit of [appellant's] railroad retirement benefits through Conrail. Said benefits shall be determined as one-half of a fraction, the numerator being the number of years of [appellant's] employment while married and the denominator being the total number of years of his employment with the railroad. [Appellant] should be entitled to all of the Tier I benefits and the remainder of the Tier II benefits."
Further, appellant did not offer any evidence as to the exact value of his pensions, or raise this issue in the trial court. Based on the foregoing, we find that the trial court did not err by setting forth the division of appellant's Tier II benefits as it did and appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that the trial court erred by permitting appellee's witness Eulan Tucker, a certified public accountant, to render opinions as to the value of appellant's insurance business and the value of the funds appellee claimed appellant withheld from the business receipts. Appellant argues that the witness did not have the expertise to evaluate the business because he had no training in that area and had only appraised one or two other businesses.
We note at the outset that appellant's counsel did not at any time make a general objection to Tucker's testimony. When appellee's counsel asked Tucker what value he placed on appellant's business, appellant's counsel objected on the basis of a lack of foundation. After a brief discussion with the court, counsel withdrew the objection. There were no further objections to this witness's testimony. Appellant argues at length about expert witnesses and asserts that Tucker was not qualified to render an opinion on any of the issues related to appellant's business, but did not object at any time to this witness's qualifications.
An appellate court need not consider an error which a complaining party could have, but did not, call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.St. v. Williams (1977), 51 Ohio St.2d 112. See, also, Van Camp v. Riley
(1984), 16 Ohio App.3d 457 . Accordingly, this court finds that this claimed error was waived and appellant's third assignment of error is not well-taken.
In his fourth assignment of error, appellant asserts that the trial court erred by finding that he had engaged in financial misconduct without clear and convincing evidence of such conduct. Appellant argues that financial wrongdoing in this context is equivalent to fraud and that the burden of proof for a finding of financial misconduct therefore should be clear and convincing evidence, as it is for a finding of fraud. We find, however, no support in law for appellant's argument as to the burden of proof for financial misconduct.
R.C. 3105.171(E)(3) provides in pertinent part as follows:
 "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing. Jump v. Jump (Nov. 30, 2000), Lucas App. No. L-00-1040, unreported, citing Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268, unreported. "Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." Hammond, supra.
The time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter, i.e., the use of marital assets or funds during the pendency of or immediately prior to filing for divorce. SeeBabka v. Babka (1992), 83 Ohio App.3d 428 (account liquidated "just prior to the parties' divorce); Gray v. Gray (Dec. 8, 1994), Cuyahoga App. No. 66565, unreported (transferring or withdrawing funds during separation period in order to secret them from the other spouse). An allegation of financial misconduct, unsupported by evidence of wrongdoing, will not support a dissipation award. Rinehart v. Rinehart (May 18, 1998), Gallia App. No. 96 CA 10, unreported.
In this case, the trial court's determination that appellant had engaged in financial misconduct was based upon evidence which included the testimony of appellant; Eulan Tucker, the CPA who examined the agency's books and records; and Dennis Fairchild, from Huntington Bank, where appellant's agency had an account. Appellant was not cooperative when questioned as to what happened with the agency's cash receipts from September 1997, when appellee filed the complaint for divorce, through February 1998. Appellant admitted that he took the cash receipts home during those months but said he deposited some cash in February 1998. Appellant then said he disagreed with Tucker's conclusion that $177,163 that came into the agency during that period was never deposited into the corporate account, and said he could prove otherwise. Appellant admitted that during those four months he deposited a total of $12,000 in commission checks despite average cash deposits of $25,800 per month for the prior eight months. Appellant further stated that he did not keep an accounting of the money he did not deposit.
Dennis Fairchild, manager of the Huntington Bank branch where appellant's agency had an account, identified records of deposits into and withdrawals from the agency account for the period from December 1996 through June 1998.
Eulan Tucker testified that appellee asked him to perform an appraisal of the Detlef Insurance Agency as of December 1996. Tucker testified as to the criteria he used to arrive at the appraisal and stated that those criteria were standard for evaluating an insurance business. He further testified that he valued the business itself at $190,000 with tangible assets of about $99,134, for a total value of $289,000. Tucker explained how he determined that there was approximately $177,000 in funds reflected in the agency's cash receivables book from August through December 1997 that was not deposited into either of the agency's checking accounts at Huntington Bank.
We have thoroughly reviewed the record of proceedings in the trial court and, upon consideration thereof, we find that the trial court's finding that appellant was guilty of financial misconduct did not constitute an abuse of discretion. The trial court painstakingly reviewed the testimony as summarized above and the documentary evidence of deposits into the agency's bank account, and concluded that appellant withheld significant amounts of cash from that account in the four months immediately after his wife filed the complaint for divorce. Accordingly, appellant's fourth assignment of error is not well-taken.
In his fifth assignment of error, appellant asserts that the trial court erred by not finding appellee guilty of financial misconduct or penalizing her in proportion to the amount of money she "misappropriated." Appellant claims that the trial court "dismissed Appellee's financial misconduct summarily." We disagree.
The parties stipulated that appellee had removed $15,000 from one of their joint bank accounts near the time she filed for divorce. Based on that stipulation, the trial court deemed appellee to have received $15,000 from the marital estate. The trial court in no way "dismissed" appellee's actions. While the court did not make a specific finding that appellee was guilty of financial misconduct, it did state in its judgment entry that "appellant's financial misconduct was considerably more notorious," inferring that appellee had engaged in financial misconduct as well. It is clear that the trial court took appellee's actions into account when dividing the marital assets. The trial court's decision as to this issue was not in error and appellant's fifth assignment of error is not well-taken.
In his sixth assignment of error, appellant asserts that the trial court erred by failing to consider the federal and state income tax implications of the division of marital property. Appellant argues that the trial court did not refer to any possible tax consequences related to his business, but then states that those "are not definitive tax problems." A review of the division of marital assets shows that the trial court's order did not require the sale of any property or any other actions that would require a consideration of income tax consequences. Accordingly, appellant's sixth assignment of error is not well-taken.
In his seventh assignment of error, appellant asserts that the trial court erred by valuing his insurance agency at $70,100. Appellant argues that the trial court did not use an accepted formula for its determination, but he does not indicate which method the court should have used or suggest the amount at which the business should have been valued.
The trial court indicated that it based its finding as to the value of the insurance agency on the testimony of appellant's own expert, Anna Shuherk. Shuherk stated that she has specialized in appraising small to medium-sized independent insurance agencies for nineteen years. She testified that appellant's business was classified as a non-standard high risk automobile insurance agency with a completely different valuation and sale price than a standard insurance agency would have.
Shuherk testified as to how she arrived at a valuation of appellant's business by examining the type of accounts, income and expenses. Shuherk averaged income and expenses over a three-year period and ultimately concluded that the agency had a value of $70,100. Based on the testimony of appellant's own expert witness, we find that there was competent, credible evidence to support the trial court's finding as to the value of appellant's business. Accordingly, appellant's seventh assignment of error is not well-taken.
In his eighth assignment of error, appellant asserts that the trial court erred by not finding that any of the property subject to division constituted separate property. Appellant does not, however, identify any property as arguably having been separate as opposed to marital. Appellant merely quotes R.C. 3105.171(A)(3)(b), which defines separate property, and cites to several Ohio cases which address the issue of separate property versus marital property. This argument is without merit and, accordingly, appellant's eighth assignment of error is not well-taken.
In his ninth assignment of error, appellant asserts that the trial court erred by awarding appellee spousal support of $2,000 per month for the first year and $1,750 for the remainder of her life, subject to the conditions set forth in the final decree. Appellant concedes that spousal support was in order but argues that the award made by the trial court was not justified or in compliance with R.C. 3105.18. Appellant takes issue with the trial court's findings as to appellee's monthly living expenses and asserts that the court ignored appellee's prior work experience, education and training. He further argues that the trial court's finding as to his annual income is not accurate.
Our review of a trial court's decision as to spousal support is limited to a determination of whether the court abused its discretion. Bowen v.Bowen (1999), 132 Ohio App.3d 616, 626. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In deciding whether spousal support is "appropriate and reasonable" and determining the "nature, amount, and terms of payment, and duration of spousal support," the trial court must consider all of the fourteen factors found in R.C. 3105.18(C)(1). Schultz v. Schultz (1996),110 Ohio App.3d 715, 724. The trial court's judgment must contain sufficient detail to enable a reviewing court to determine that the spousal support award is "fair, equitable and in accordance with the law."Kaechele v.
 Kaechele (1988), 35 Ohio St.3d 93, 97; Glick v. Glick (1999),133 Ohio App.3d 821, 830.
Upon consideration of the record of proceedings in the trial court and the law as summarized above, this court finds that the trial court's order as to spousal support is not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. In its January 6, 2000 decision, the trial court detailed its consideration of the factors set forth in R.C. 3105.18(C) as they apply to this case. A review of the evidence of the parties' income for the three years prior to the divorce shows that appellant had an average annual income of approximately $100,000, while appellee's income, derived from occasional employment with Detlef Insurance Agency, averaged $3,000 per year. Appellee was currently working thirty-five hours a week at a fast-food establishment with a monthly take-home pay of $800. The trial court also considered the relative earning abilities of the parties and concluded that appellee's was at the level of minimum wage. The trial court further considered the parties' ages and physical and mental conditions; their retirement benefits; standard of living; education; relative assets and liabilities; the duration of the marriage; the contribution of either party to the earning ability of the other, and the tax consequences of spousal support payments. The trial court found that appellee had failed to justify her request for spousal support in the amount of $4,000 per month and that, based on her income from employment and interest on investments, she was entitled to spousal support of $2,000 per month for one year and $1,750 per month thereafter. The trial court further found that appellant has sufficient income to satisfy the spousal support award and continue to meet his own monthly expenses.
Upon consideration of the foregoing, this court finds that the trial court thoroughly considered all of the factors set forth in R.C. 3105.18(C) and carefully applied them to the facts of this case, and that the court's decision as to spousal support was not unreasonable, arbitrary or unconscionable. Accordingly, appellant's ninth assignment of error is not well-taken.
In his tenth assignment of error, appellant asserts that the trial court erred by permitting Peter Brown to testify as an expert witness on the issue of the valuation of appellant's business because Brown did not have the necessary expertise. When appellee asked Brown if he had an opinion as to how one would go about appraising the value of an agency such as Detlef's, appellant objected. The trial court expressed reservations as to Brown's qualifications and sustained the objection. When appellee asked Brown if he thought it was reasonable to value the agency at $70,000, appellant objected again and the objection was sustained. Brown did not at any time give his opinion as to the value of appellant's agency. Appellant's tenth assignment of error is not well-taken.
In his eleventh assignment of error, appellant asserts that, in light of the total value of marital assets awarded to appellee, the trial court erred by ordering him to pay a portion of appellee's attorney fees. Appellee requested an award of $10,243 in attorney fees, as well as reimbursement for expert witness expenses and certain other expenses. The trial court awarded appellee partial attorney fees of $5,035.
A trial court's decision regarding the award of attorney fees in a divorce proceeding should not be interfered with absent a clear showing of prejudice or abuse of discretion. Birath v. Birath (1988),53 Ohio App.3d 31; Layne v. Layne (1992), 83 Ohio App.3d 559, 568. R.C. 3105.18(H) provides that the trial court may award reasonable attorney fees to either party at any stage of a divorce proceeding if it determines that the other party has the ability to pay the fees that the trial court awards.
In this case, the trial court thoroughly considered the applicable law, as well as the amount of each party's attorney fees and their respective abilities to pay those fees. The court found that appellee had been awarded liquid assets that would enable her to pay attorney fees and related expenses but that she incurred additional attorney fees and certain expenses directly attributable to appellant's belligerent and obstructive conduct. Based on the foregoing, this court finds that the trial court's award of partial attorney fees to appellee was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. Accordingly, appellant's eleventh assignment of error is not well-taken.
 Cross-Appeal
Appellee sets forth the following assignments of error on cross-appeal:
 "1. THE FINDING THAT DEFENDANT HAD ONLY WITHHELD $78,543.00 FROM THE INSURANCE AGENCY WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE AND WAS CONTRARY TO THE WEIGHT OF THE EVIDENCE.
 "2. THE METHOD USED BY THE TRIAL COURT TO DETERMINE THE AMOUNT OF MONEY THAT DEFENDANT REPAID TO THE AGENCY CONSTITUTED AN ABUSE OF DISCRETION.
 "3. THE FAILURE OF THE TRIAL COURT TO AWARD PLAINTIFF EXPENSES OF SUIT FOR HER EXPERT WITNESS WAS AN ABUSE OF DISCRETION."
In support of her first assignment of error, appellee asserts that her expert testified that there was $177,163 missing from the agency checking account during the period from August through December 1997 and that appellant offered no evidence, other than his own testimony, that he had returned any of it to the account.
This court has thoroughly reviewed the evidence that was before the trial court. The trial court's findings as to this issue were based on evidence submitted by appellee — Huntington Bank records from the agency account and the testimony of appellee's witness Eulan Tucker, who examined the bank records. Based on appellee's evidence, the trial court made the following calculations:
 a) the average pre-filing monthly deposit was $23,884 (8-month average)
 b) the average post-filing deposit was $4,364 (6-month average), $19,520 less than the pre-filing average
 c) $19,520 x 6 months = $117,120 not deposited into account
d) $36,743 average cash deposits April, May, June 1998
 e) average monthly deposits for April, May and June 1998 were $12,859 higher than average pre-filing deposits ($36,743 — $23,884 = $12,859)
 f) 3 x $12,859 = $38,577 credited to appellant as having been deposited during April, May and June 1998
 g) $117,120 — $38,577 = $78,543 withheld from agency account.
Thus, the trial court credited appellant for having returned to the agency account $38,577 and then deducted that amount from the $117,120 shortfall, for a total amount of $78,543 withheld. As we stated above, the calculations and findings are based almost entirely on evidence submitted by appellee. Based upon our independent examination of the evidence in the record, we find that the trial court's decision was supported by competent, credible evidence and, accordingly, appellee's first assignment of error on cross-appeal is not well-taken.
In her second assignment of error, appellee asserts that the method used by the trial court to determine the amount of money appellant repaid the agency constituted an abuse of discretion because appellant presented no documentary evidence in support of his position. Appellee argues that if appellant was not in fact responsible for the increase in deposits during 1998, more than $78,543 was still missing from the account.
Appellant testified that he put money back into the agency account and the trial court took that testimony into consideration when examining the evidence and computing the figures as set forth above. Based on the foregoing, this court finds that the trial court's decision was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion. Accordingly, appellee's second cross-assignment of error is not well-taken.
In her third cross-assignment of error, appellee asserts that the trial court abused its discretion by not awarding her expenses of suit arising from the cost of hiring an expert witness to trace the money appellant failed to deposit into the agency account.
In its judgment entry, the trial court found that the majority of appellee's legal fees were reasonably associated with the prosecution of her case and that she had been awarded liquid assets sufficient to enable her to pay those fees. The trial court ordered appellant to pay $5,035 to appellee for partial attorney fees. For the reasons set forth under appellant's Assignment of Error No. 11, this assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the parties complaining, and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs of this appeal are assessed to the parties equally.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.