DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of divorce entered by the Wood County Court of Common Pleas, Domestic Relations Division. Appellant/cross-appellee, David J. Hyslop, asserts the following assignments of error:
 {¶ 2} "The trial court abused its discretion and erred to the prejudice of appellant when it refused to abide by the provisions of the parties' antenuptial agreement after properly finding that it was a valid agreement.
 {¶ 3} "The trial court abused its discretion and erred to the prejudice of appellant when it awarded attorney's fees to appellee.
 {¶ 4} "The trial court abused its discretion and erred to the prejudice of appellant when it valued, divided and distributed certain assets."
 {¶ 5} Appellee/cross-appellant, Joyce Hyslop, asks this court to consider the following cross-assignment of error:
 {¶ 6} "The trial court erred to the prejudice of the appellee/cross-appellant by failing to include a cost of living adjustment (`COLA') when determining the value of the appellant's STRS benefits."
 {¶ 7} Appellant's first assignment of error challenges the trial court's construction of an antenuptial agreement entered into by the parties prior to their marriage. The facts relevant to this assignment are as follows.
 {¶ 8} Appellant and appellee were married on November 11, 1985. Their antenuptial agreement was signed on October 30, 1985. This was the second marriage for both appellant and appellee; both parties have children from their former marriages, but no children were born of this marriage. The parties were married for almost 16 years.
 {¶ 9} Appellant, who is retired, but still works part-time at Bowling Green State University, earns $94,000 per year. The value of his benefits in the State Teachers Retirement System ("STRS"), and absent any cost of living adjustment, is $503,000. Appellee also works at BGSU, earning approximately $44,000 per year. Her retirement fund, the Public Employees Retirement System ("PERS") has a present value of almost $85,000.
 {¶ 10} Appellant's attorney drafted the prenuptial agreement, which, among other things, sets forth the separate property of each of the parties and the value of each as of the date of the agreement. This list includes the amounts in appellant's and appellee's pension plans, appellant's equity in a separately owned house and certain other assets, such as appellant's Templeton accounts. Appellee consulted her own attorney before signing the agreement.
 {¶ 11} Article One of the agreement expresses its purpose and reads:
 {¶ 12} "The parties to this agreement intend and desire to define their respective rights in the property of the other, and to avoid such interests which, except for the operation of this agreement, they might acquire in the property of the other as incidents of their marriage relationship."
 {¶ 13} Article Three of the agreement provides that neither party will, "during the lifetime of the other * * * take claim, demand, or receive, * * * and waive and release, all rights, claims, titles, interests, * * * in which either might have by reason of their marriage to each other * * *." The waiver of rights, claims and interests includes, but is not limited to, a claim for dower and curtesy or any statutory substitute thereof, inheritance by intestacy, the right to elect against each other's wills, the right to act as executor or administrator of the estate of the other and the like. Paragraph G of this provision relinquishes the parties' "right to claim alimony, except to the extent that there should be a fair and equitable division of all marital property in the event of a divorce or dissolution of the marriage."
 {¶ 14} In its final judgment the trial court found that the antenuptial agreement referred only to property owned by the parties at the time of the marriage, "such that all subsequent marital property is subject to a fair and equitable division." The domestic relations court therefore concluded that any nonpassive appreciation in the value of the listed separate properties was marital property subject to an equitable division. Thus, in dividing the property between the parties, the trial court included, among other things, the increase in value of the previously mentioned pension plans, the increase in the value of the house owned by appellant prior to the marriage as marital property, and the increases in various accounts listed by appellant and appellee in the antenuptial agreement.
 {¶ 15} Notably, neither of the parties to this appeal dispute the validity of the antenuptial agreement. We shall therefore not discuss those cases that deal with the validity of such agreements. Appellant, however, challenges the trial court's construction of those provisions of the agreement which control the nature and division of the parties' property in the event of a divorce or dissolution. Specifically, appellant contends that the trial court erred in finding that the agreement does not preclude the inclusion of any nonpassive appreciation in the value of the listed separate property as marital property, as well as any separate property acquired by each of the parties during the marriage.
 {¶ 16} An "antenuptial agreement" is a contract entered into between a man and a woman in contemplation of their future marriage whereby the property rights and economic interests of the parties are determined and set forth. Rowland v. Rowland (1991), 74 Ohio App.3d 415,419. Because they are contracts, the law governing the interpretation of contracts generally applies to antenuptial agreements. Fletcher v.Fletcher (1994), 68 Ohio St.3d 464, 467. The construction of a contract is a matter of law to be determined by the court. Latina v. WoodpathDev. Co. (1991), 57 Ohio St.3d 212, 214. Accordingly, the trial court's resolution of this legal issue is reviewed de novo on appeal. Graham v.Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313.
 {¶ 17} In construing a contractual agreement, the primary objective of a court is to "ascertain and give effect to the intent of the parties." Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361. When the terms of the contract are clear and unambiguous, courts may not create a new contract by finding intent not expressed in those terms. Alexanderv. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 245-246, Under contract principles, words in an unambiguous contract must be given their plain and ordinary meaning. Forstner v. Forstner (1990),68 Ohio App.3d 367, 372. In the present cause, the express intent of appellant and appellee as stated in the purpose of the antenuptial agreement is not only to state the separate property of the parties at the time of the marriage, but also to "avoid such interests which, except for the operation of this agreement, they [appellant or appellee] might acquire in the property of the other as incidents of their marriage relationship."
 {¶ 18} The plain and unambiguous meaning of "avoid" is, inter alia, "to make legally void, "to keep away from," and "to prevent the occurrence or effectiveness of." Merriam Webster's Collegiate Dictionary (10 Ed. 1996) 80. An "interest" is a "right, title or legal share in something." Id. at 610. "Incident" is defined as "something dependent on * * * something else of greater or principal importance" and as an "occurrence." Id. at 587. Thus, the language of the agreement expresses an intent to prevent either appellant or appellee from acquiring any claim, title or right to each other's separate property that, in the absence of an antenuptial agreement, would occur due to their marital relationship or was dependent upon their marital relationship. This conclusion is bolstered by the words used in Article Three, which expressly refers to alimony and the equitable division of marital property in the event of a divorce or dissolution. We therefore hold that, based upon the language of the antenuptial agreement, appellant and appellee intended that, in the absence of the commingling of the property, any passive appreciation in the value of the separate property of the parties remains the separate property of each. In addition, and in the absence of commingling, any after-acquired separate property, as defined in R.C. 3105.171(A)(6)(a), remains the property of each party.
 {¶ 19} Nevertheless, we cannot find that the antenuptial agreement mandates that nonpassive appreciation in the parties' separate property that accumulates after the marriage is itself separate property. For example, retirement benefits acquired by either spouse during the course of a marriage are marital assets that must be considered in achieving an equitable division of marital property. R.C. 3105.171(A)(3)(a)(ii)[1];Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 132; Ricketts v. Ricketts
(1996), 109 Ohio App.3d 746, 751. At least two state courts have concluded that in order to earmark increases in pension benefits accumulated from the spouse's salary during marriage, that salary must be specified as nonmarital property. See Witkowski v. Witkowski (Fla.App. 2000), 758 So.2d 1181 and Wilson v. Moore (Tenn.App. 1996), 929 S.W.2d 367.
 {¶ 20} While we do not necessarily espouse the view of theWitkowski and Wilson courts, we do find that to prevent nonpassive increases in separate property from being denominated "marital" property, an antenuptial agreement should contain more specific terms referring to the future of that property. That specificity was not achieved in this cause. Therefore, with regard to any nonpassive appreciation of separate property, the trial court properly applied R.C.3105.171(A)(3)(a)(iii), which states that "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage" is marital property. See, also, Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401.
 {¶ 21} Appellant next argues that the trial court erred in finding that the increase of value of the house he owned prior to his marriage was marital property. Essentially, appellant contends that this finding was not supported by the evidence.
 {¶ 22} A domestic relations court has considerable discretion when dividing marital assets. Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 180. A trial court's decision regarding the division of marital property will be upheld absent an abuse of discretion. Holcomb v. Holcomb,44 Ohio St.3d at 130; Martin v. Martin (1985), 18 Ohio St.3d 292. Abuse of discretion is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 23} No abuse of discretion occurs if the trial court's determination that a particular asset is marital property is supported by some competent, credible evidence. Okos v. Okos (2000),137 Ohio App.3d 563, 569-570. See, also, Middendorf v. Middendorf,82 Ohio St.3d at 401. Thus, our task is to determine whether some competent, credible evidence was offered to show that the appreciation on the home was due to appellee's labor, monetary, or in-kind contribution during the marriage. Middendorf at 401.
 {¶ 24} Here, the antenuptial agreement lists appellant's $17,000equity in the house as separate property. Further, it is undisputed that although appellant retained sole title to this house, it was used as the marital residence for 13 years. The evidence offered at the trial of this matter demonstrated that the house was remortgaged, that is, refinanced, in 1986, shortly after the parties were married. The mortgage was in the names of both appellant and appellee. The house was refinanced again in 1992 and 1994. These mortgages also named appellant and appellee as the mortgagors. Moreover, two home equity credit lines were in the names of both parties.
 {¶ 25} Appellee gave appellant $325 per month to pay for expenses; appellant used this money for any purpose that he desired, including payments on the mortgage and home improvements. Prior to the marriage, appellee sold her household goods, receiving "several thousand" dollars from sales. This money was given to appellant to use to re-carpet the house and for other improvements. She also provided labor-such as cleaning the home and yard work for the entire 13 years that she lived in that house. Based on the foregoing, we find that there was some competent, credible evidence offered to support the trial court's factual finding that the appreciation in the value of the house during the marriage was due to appellee's efforts. Accordingly, the trial court did not abuse its discretion in determining that the appreciation in the marital residence was marital property subject to equitable distribution. Consequently, appellant's first assignment of error is found not well-taken.
 {¶ 26} In his second assignment of error, appellant asserts that the trial court erred in awarding appellee $10,000 in attorney's fees.
 {¶ 27} R.C. 3105.18(H) provides that a trial court may award reasonable attorney's fees to either party during any stage of a divorce proceeding. However, attorney's fees are "primarily the function of the party who retains the attorney." Farley v. Farley (1994),97 Ohio App.3d 351, 358. Therefore, in order to make such an award, the court must determine whether the payor has the ability to pay the attorney's fees it awards and whether either party would be prevented from fully litigating his or her rights and adequately protecting his or her interests if reasonable attorney's fees are not awarded. Id. The trial court's decision regarding attorney's fees must be equitable, fair, and serve the ends of justice. Bowen v. Bowen (1999),132 Ohio App.3d 616, 642.
 {¶ 28} When attorney's fees are awarded in divorce proceedings, they are awarded as part of spousal support. Consequently, the court must contemplate those same factors contained in R.C. 3105.18(B) which it considers when it makes a spousal support award. Glick v. Glick (1999),133 Ohio App.3d 821, 831; Aponte v. Aponte (Feb. 15, 2001), Cuyahoga App. Nos. 77394 and 78090. An appellate court will only disturb a trial court's decision as to attorney's fees if the trial court abused its discretion. Id.
 {¶ 29} In the instant case, the trial court found that it was appellant who prolonged this litigation thereby causing appellee to incur $20,000 in reasonable and necessary attorney's fees. The court made no findings concerning appellant's ability to pay these attorney's fees or appellee's inability to fully litigate her rights or to protect her interests in the absence of an award of reasonable attorney's fees. Finally, the trial court failed to consider any of the relevant factors set forth in R.C. 3105.18(H). Thus, the award of $10,000 attorney's fees to appellee appears to be punitive rather than based upon the law. Accordingly, we find that the trial court abused its discretion in making such an award, and appellant's second assignment of error is found well-taken.
 {¶ 30} In his third and final assignment of error, appellant contends that the trial court abused its discretion in its designation of, valuation of and/or distribution of specific items of property.
 {¶ 31} As stated previously, we cannot reverse the trial court's judgment as to its distribution of property absent an abuse of discretion. Holcomb v. Holcomb, 44 Ohio St.3d at 130. Again, no abuse of discretion occurs if it is apparent from the trial court's record that its decision is supported by some competent, credible evidence.Middendorf v. Middendorf (1998), 82 Ohio St.3d at 401.
 {¶ 32} Appellant first argues that the trial court abused its discretion by deviating from the court's chosen date, December 29, 1999, for the valuation of a checking account at Mid-American National Bank. Appellant opened the account, in his name only, on November 11, 1998, at approximately the same time that appellee moved out of the marital residence. The record reveals that appellant refused to disclose this checking account throughout the proceedings below, including at the hearing on this matter.
 {¶ 33} The highest balance in this account was $17,443.83 as of July 21, 1999. The court below found that it was martial property. Appellee offered evidence showing that as of December 28, 1999, this checking account had a balance of $2,229.60. This was the sole evidence of that balance as of December 29, 1999. Nevertheless, the trial court listed the value of this account as $18,000 for the purpose of the division of marital property.
 {¶ 34} Generally, a domestic relations court should use the same set of dates in valuing marital property. Keyser v. Keyser (Apr. 9, 2001), Butler App. No. CA2000-06-127, citing Herrmann v. Herrmann (Nov. 6, 2000), Butler App. No. CA99-01-006, CA99-01-011. The circumstances in some cases may, however, require the court to employ different dates for valuation. Id.
 {¶ 35} Thus, trial court need not utilize the same valuation date for each item of marital property. Green v. Green (June 30, 1998), Ross App. No. 97CA23333.
 {¶ 36} Even though there may be an equitable reason for selecting a different date on which to value different marital assets, Landry v.Landry (1995), 105 Ohio App.3d 289, 293, the trial court, in choosing a different valuation date for certain marital assets, must adequately explain its reasons for doing so. Angles v. Angles (Sept. 15, 2000), Fairfield App. No. 00CA1; Coble v. Gilanyi (Dec. 23, 1999), Trumbull App. No. 97-T-0196. R.C. 3105.171(G) requires the trial court to make written findings that support the determination that marital property has been equitably divided, and to specify the dates it used in determining the meaning of "during the marriage." Angles, supra.
 {¶ 37} Based on the foregoing, the domestic relations court had the discretion to choose a different valuation date for the Mid-American National checking account.
 {¶ 38} We conclude, however, that the trial court did not make all of the requisite findings. The lower court did find that appellant withheld information from appellee about this account and never explained his actions. The court also stated that the checking account had a balance of over $17,000 and that appellant distributed $5,000 from the account to his son in July 1999. Thus, the court did articulate a reason for using a different valuation date. It did not, nonetheless, specify the date used for valuation. Moreover, evidence offered at the trial of this matter reveals that there was never $18,000 in the Mid-American National Bank checking account.
 {¶ 39} Accordingly, we find that appellant's argument concerning this account has merit. Because a domestic relations court has the option of selecting different valuation dates for property, we decline to usurp its authority by assigning the value of $2,229.60 figure requested by appellant. Rather, we will remand this cause to the trial court for further disposition of this issue in a manner consistent with this judgment.
 {¶ 40} Appellant next argues that the trial court erred in failing to include the value of appellee's Huntington Bank checking account when equitably dividing the marital property.
 {¶ 41} R.C. 3105.171(B) requires that "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." Here, in Paragraph 2 of its conclusions of law, the trial court listed specific items of property that it considered marital property. In Paragraph 4 of its Conclusions of Law the court states: "All other properties of the parties are separate to the party whose name it bears." The $408.91 in appellee's Huntington Bank checking account is not on the list of marital assets. Regardless, the evidence offered at trial disclosed that this was the balance in appellee's checking account "during the marriage," that is, on December 29, 1999. Therefore, we find that the trial court abused its discretion in failing to include this amount as a marital asset and to include it in the equitable division of marital property.
 {¶ 42} Appellant also maintains that the trial court abused its discretion in finding that the $7,374 in his Edward Jones money market account is a marital asset. He argues that the evidence offered at trial shows that $3,700 of this amount was a transfer of funds from separate property, the Huntington Bank IRA, listed in the antenuptial agreement. We disagree.
 {¶ 43} Generally, the party seeking to have property declared separate property has the burden of proof by a preponderance of the evidence. Peck v. Peck (1994), 96 Ohio App.3d 731, 734. Appellant did not satisfy this burden.
 {¶ 44} The testimony of the parties' stock broker was that he could not trace the Huntington Bank IRA back to 1985. He testified that he could attest that $3,700 of that IRA, then worth $7,000, was transferred to the Edward Jones money market account (The Daily Passport Cash Trust) in November 1993, but also said that he could not determine the activity in the account between 1985 and 1993, years in which appellant and appellee were married. As a result, the trial court did not abuse its discretion finding that the entire $7,374 is a marital asset.
 {¶ 45} Finally, appellant claims that the trial court abused its discretion by determining that a Marriott Time Share, second week, at Hilton Head, South Carolina, was a marital asset.
 {¶ 46} Appellant and appellee purchased a Marriott Time Share week in 1994. At the time of the final hearing this time share was valued at $17,400. It is undisputed that this is a marital asset. Appellant, however, purchased a second Marriott Time Share week in July 1998 and titled it in his name and his son's name. Appellant claimed that it was a college graduation gift for his son, who was not expected to graduate for at least two more years. Appellant testified that he "assumed" that he paid for the second time share with "money that I've earned." He also acknowledged that he paid for the maintenance fees, taxes and other expenses associated with ownership of the second time share with his income. No gift tax return was ever filed with regard to this purchase; no conveyance of appellant's portion of the second time share to appellant's son was ever offered.
 {¶ 47} Appellee testified that appellant came to her in 1998 and said that he was purchasing a second time share. Appellee indicated that this was something that they should discuss. According to appellee, appellant told her that no discussion was necessary because he was buying the second time share for his children in case "something ever happened to him." Appellee did not agree to the purchase. She said that appellant never discussed the second time share as a gift for his son and that she never agreed to the same.
 {¶ 48} The elements of a valid inter vivos gift requires proof of the following: (1) the donor must intend to make an immediate gift of the property; (2) the donor must deliver the property to the donee or a third person as trustee for the donee; and (3) the donor must relinquish all dominion and control of the property. Streeper v. Myers (1937),132 Ohio St. 322, paragraph one of the syllabus. If any one of the elements is absent, the gift fails. Bolles v. Toledo Trust Co. (1936),132 Ohio St. 21, 30-31. Clearly, no evidence was offered on, at the least, the third element. Therefore the trial court did not abuse its discretion in determining that the Marriott Time Share, second week, was a marital asset.
 {¶ 49} For the foregoing reasons, appellant's third assignment of error is found well-taken, in part, and not well-taken, in part.
 {¶ 50} In her sole assignment of error on cross-appeal, appellee asserts that the trial court erred when it declined to include a cost of living adjustment ("COLA") when determining the value of appellant's STRS benefits.
 {¶ 51} In fashioning an equitable division of marital property, the trial court first determines the value of marital assets. Eisler v.Eisler (1985), 24 Ohio App.3d 151, 152. Although all of the marital assets must be assigned a value, the court is not required to employ rigid rules to determine that value. Baker v. Baker (1992),83 Ohio App.3d 700, 702, citing Briganti v. Briganti (1984),9 Ohio St.3d 220, 221. Thus, the trial court has broad discretion to determine the value of marital property. Berish v. Berish (1982),69 Ohio St.2d 318, 318. Absent an abuse of discretion, the trial court's decision will not be disturbed on appeal. Id.
 {¶ 52} In the case under consideration, appellant urges that due to changes in Ohio law, the trial court erred in failing to include the COLA in the value of appellant's STRS benefits. Appellee's expert witness, David I. Kelley, a pension evaluator, valued appellant's benefits, including the COLA, as $603,503.23 and without the COLA, as $502,578.43. Kelley stated in his report that the passage of H.B. 365, as effective July 1, 1996, made the rationale for excluding COLA in valuing, among others, STRS and PERS benefits less plausible than in previous years. That is, finding, as did the trial court, that factoring COLA into STRS benefits is too speculative is not as credible since the enactment of H.B. 365[2]. Nonetheless, even Kelley notes in his report that domestic relations courts in Ohio have the discretion to include or not include COLA in setting a value on retirement benefits.
 {¶ 53} Therefore, and upon our review of the record of this cause, we cannot conclude that the trial court, in choosing to value appellant's pension without the COLA, overstepped the extremely high threshold of an abuse of discretion standard. Accord, Cross v. Cross
(June 20, 2001), Wayne App. No. 00CA0074; Corbett v. Corbett (June 1, 1999), Coshocton App. Nos. 98-CA-16 and 98-CA-19; Pesuit v. Pesuit (Nov. 17, 1997), Guernsey App. No. 97CA01. Therefore, appellee's sole cross-assignment of error is found not well-taken.
 {¶ 54} On consideration whereof, this court affirms the judgment of the trial court, in part, and reverses the judgment of the trial court, in part. This cause is remanded to the Wood County Court of Common Pleas, Domestic Relations Division, for further proceedings consistent with this judgment. Appellant and appellee are ordered to pay the costs of this appeal and cross-appeal in equal shares.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
Peter M. Handwork, J., Richard W. Knepper, J., and George M. Glasser,J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] R.C. 3105.171 was in effect at the time that this divorce proceeding was commenced and is therefore applicable to the trial court's determination of the equitable distribution of the parties' property, including those definitions of separate and marital property found therein.
[2] H.B. 365 authorizes a payment of a cost of living increase even when the Consumer Price Index increase is less than three per cent, thus increasing the likelihood of annual COLA to STRS benefits.