OPINION
[¶ 1] Plaintiff-appellant Sam Sicilia ("Husband") appeals from the decision of the Columbiana County Court of Common Pleas, Domestic Relations Division, granting him a divorce from defendant-appellee Carol Sicilia ("Wife"), ordering him to pay child support, and spousal support, and dividing the property and debts. We are asked to determine if the trial court abused its discretion in dividing property, ordering spousal support and ordering child support. For the reasons stated below, the decision of the trial court is affirmed.
[¶ 2] This case is related to Sicilia v. Sicilia, 7th Dist. No. 99CO66, 2001-Ohio-3364. As such the facts are identical. The parties were married on November 8, 1980. One child was born as issue of the marriage, Jaclyn Sicilia. The court granted the parties a divorce and entered its judgment on August 31, 1999. Husband timely appealed that decision. Our court remanded the decision back to the trial court to determine whether the property at issue was marital or separate property. Id. Accordingly, the trial court reviewed the transcript of proceedings and determined that the property at issue was marital property. 10/31/01 J.E. Husband timely appeals from that decision.
 ASSIGNMENT OF ERROR NO. ONE [¶ 3] Husband raises four assignments of error. The first of which contends:
 [¶ 4] "THE TRIAL COURT'S DIVISION OF THE APPELLANT'S PREMARITAL HOME EQUITY WAS AN ABUSE OF DISCRETION AND THEREFORE CONTRARY TO LAW."
 [¶ 5] An appellate court reviews a trial court's determination of property division under a manifest weight of the evidence standard. Martinv. Martin (1985), 18 Ohio St.3d 292. The trial court's judgment will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. A reviewing court should be guided by the presumption that the finding of the trial court is correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use those observations in weighing the credibility of the testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. However, the trial court's decision is unreasonable if no sound reasoning process exists to support that decision. AAAA Ent., Inc. v. River Place CommunityUrban Redevelopment Corp. (1990), 50 Ohio St.3d 157.
[¶ 6] Prior to the marriage, husband owned the marital home. Husband claims that part of the equity in the home was his separate property. Husband testified he "guessed" he had at least $80,000 in equity in the house at the time of the marriage. (Tr. 46). Wife testified that she "believed" husband's equity in the house at the time of the marriage was $30,000. (Tr. 418). No documentation was provided to support either party's "guess" or "belief." The proceeds from the sale of the house was $9,000. (Tr. 46). Husband explained that the reason the proceeds from the sale of the house were so small was due to the second mortgage the parties had previously taken out on the house, which they had used to pay off some of their debt. (Tr. 46). The trial court held that the $9,000 was marital property and as such divided that amount between the parties. Husband claims that the trial court's holding is incorrect.
[¶ 7] Marital property does not include any separate property. R.C. 3105.171(A)(3)(b). Separate property includes all real property and any interest in real property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when separate property is not traceable." R.C. 3105.171(A)(6)(b).
[¶ 8] Husband has the burden to prove by a preponderance of evidence that a portion of the home is separate property rather than marital property. Zeefe v. Zeefe (1998), 125 Ohio App.3d 600, 614. When there is conflicting testimony as to the amount of separate property in a marital home and no documentation is offered in support of either parties' testimony, the trial court does not abuse its discretion by coming to the conclusion that the entire marital home was marital property and none of it constituted separate property. Peck v. Peck
(1994), 96 Ohio App.3d 731, 734-735; Martin v. Martin (Dec. 20, 2001), 8th Dist. Nos. 79219, 79388 (disputing that the down payment was separate property); Leady v. Leady (Aug. 31, 2001), 6th Dist. No. F-00-027. The evidence in the situation where there is only conflicting testimony as to the equity in property prior to marriage does not clearly trace separate property to the party claiming separate property. Martin, supra; Peck, supra at 734. However, when some documentation is provided, regardless of the fact that the documentation provided by each party is inconsistent with each other, the trial court abuses its discretion in finding that there is no separate property. Lewis v. Lewis, 12th Dist. Nos. CA2001-01-002, CA2001-01-005, 2001-Ohio-8675 (remanding the case back to the trial court because husband provided documentation from other houses that he sold, stating that the proceeds from these houses went to the down payment of the marital home).
[¶ 9] Applying the above law to the facts, the trial court did not abuse its discretion in determining that the proceeds from the sale of the marital home was marital property. Husband claimed he had separate equity in the house at the time of the marriage, therefore it was his burden to prove that a portion of the equity in the marital home was his separate property. Husband failed to meet this burden. He testified that he "guessed" he had $80,000 in equity in the house at the time of the marriage. (Tr. 46). As explained earlier, testimony alone is not enough to trace separate property that was commingled with marital property. He provided no documentation to corroborate this testimony. Had husband shown when he acquired the property, the purchase price, the indebtedness at the time of purchase and at time of marriage, this would trace his equity in the home and would provide evidence of separate property. Having failed to show any more than a mere "guess" as to the amount of equity he had in the home prior to marriage, husband has failed to prove his claim. This assignment of error is without merit. The trial court did not abuse its discretion.
 ASSIGNMENT OF ERROR NO. TWO [¶ 10] "THE TRIAL COURT'S DISTRIBUTION OF VIRTUALLY THE ENTIRE NET VALUE OF THE MARITAL ESTATE TO THE APPELLEE/WIFE IS NOT EQUITABLE, IN CONSIDERATION OF THE MANIFEST WEIGHT OF THE EVIDENCE AND THEREFORE IS AN ABUSE OF THE TRIAL COURT'S DISCRETION AND CONTRARY TO LAW."
 [¶ 11] On remand, the trial court determined the proceeds of the marital residence, the balance of the 1998 income tax refunds, the 1990 Pontiac Sunbird GT, 1998 Pontiac Grand Am GT, GM Stock Savings Plan, and the GM Pension Plan were marital property. The court divided the proceeds from the marital residence, the balance of the 1998 income tax refunds, and the GM Pension Plan equally between the parties. The trial court awarded the 1998 Pontiac Grand Am GT, estimated actual value at $13,650, to husband. However, he owed more than this on the car. The trial court awarded the 1990 Pontiac Sunbird GT to wife which was valued at $3,725. Husband was awarded $25,281.21 from the GM Stock Savings Plan which was to pay off the SSPP loans. The remainder of the Stock Savings Plan was divided equally between the parties. Deducting the loan balance on the 1998 Grand Am from husband's share of the assets, the total allocation works out to be $67,148.69 to husband and $72,443.43 to wife. This means husband received approximately 48% of the total assets and wife received approximately 52% of the total assets.
[¶ 12] The court also divided the marital debt. Husband must pay marital credit card debt of $40,118.03 and the SSPP loans of $25,281.21. However, the court allocated money from the Stock Savings Plan to pay off the SSPP loans. Wife must pay marital credit card debt $19,407.12. Without including the SSPP loan, since the trial court allocated money to pay off this debt, husband must pay approximately 67% of the marital debt, while wife pays 33%. The trial court stated that due to the earning capacity of the parties, equal division of the debt would have been inequitable. 10/31/01 J.E. As such, the debt was divided more heavily to husband. 10/31/01 J.E.
[¶ 13] Husband argues that when the allocation of debt and property is taken in conjunction with the amount of spousal support, $2,000 a month for 48 months, and child support, $871.64 per month, the division of property and debt is inequitable. He claims that as a result of these figures, wife obtains a windfall. He states that given his monthly income, he is incapable of paying the amount of debt, child support and spousal support per month as he is required to by court order.
[¶ 14] When dividing property, the court shall divide marital property equally, unless an equal division would be inequitable. R.C.3105.171(C)(1). If an equal property division would be inequitable, the court must divide the property in the manner it determines equitable. Id. The fact that a property division is unequal does not, standing alone, constitute an abuse of discretion. Cherry v. Cherry (1981),66 Ohio St.2d 348, 353. The trial court is in the best position to assess the financial positions of the parties. Greiner v. Greiner (Dec. 7, 2000), 8th Dist. No. 77181; Buckeye v. Buckeye (Dec. 29, 2000), 11th Dist. No. 99-P-0086 (stating unequal division of debt is not an abuse of discretion).
[¶ 15] In the case sub judice, clearly the debt is not allocated equally. Husband uses his 1998 income to show that he cannot pay all he is required to pay. However, in his numbers he includes the attorney fees, which were deferred by the court for 18 months from August 31, 1999. 10/26/99 J.E. As such, husband would be required to begin paying $150 a month in attorney fees starting March of 2001. The court reasoned that by this time a few of the credit cards would be paid off. Examining the debt, it appears to be reasonable that three credit cards would be paid off by this point. Furthermore, Jacklyn should graduate from high school in May 2002; she turned 18 in September 2001. As such, child support would terminate.
[¶ 16] Additionally in husband's calculation to show that he cannot pay all that is required of him, he adds in the SSPP loans and life insurance in excess of what is needed to fulfill his obligation. Regarding the SSPP loans, the trial court specifically, in its journal entry, allocated money from the Stock Savings Plan to pay this debt. Both parties agree the Stock Savings Plan contained $69,659.88 and that an early withdraw would have tax consequences. The SSPP loans amount to $25,281.21. The trial court subtracted this amount from the Stock Savings Plan and then divided the remainder equally between the parties. Husband has the option of taking the money out of the Stock Savings Plan and paying the consequences of the early withdraw to pay off the loans.
[¶ 17] Concerning the additional life insurance purchased by husband, husband admits that this life insurance is optional and could be dropped. (10/15/99 Tr. 6, 7). His only argument is that if he drops this insurance and later on can afford it, he would not be allowed to pick this policy back up. (10/15/99 Tr. 6, 7). However, the trial court found that he did not need this insurance to satisfy his spousal support and child support obligation to wife and daughter if he died before termination of those orders. He can drop this insurance and save $106 a month.
[¶ 18] Furthermore, husband uses his 1998 gross income of $88,282.78 to claim he cannot pay all the obligations he is required to. The 1998 gross income is the lowest income in the five years that preceded the divorce. Before 1998 he made between $90,000 and $100,000 gross. The trial court stated in its journal entry that husband makes roughly $100,000 per year and specifically stated in 1993, he made $93,000. The trial court was in the best position to determine the income and expenses of the parties. However, even if the 1998 figure is used, it appears husband can meet the financial obligations. His net income would be $65,510.36. Subtract from that amount the spousal support award of $24,000 and the child support obligation of $18,415.08, the remainder is $31,050.68. Subtract his living expenses for the year which was allocated by the court at $18,415.08. The remainder is $12,635.60. Then subtract $9,744 a year in credit card debt. This calculation results in a surplus of over $2,000.
[¶ 19] Husband additionally claims wife received a windfall from the divorce. However, this is not true. Adding the spousal support and the child support together, wife receives $34,459.68 per year. Also, minimum wage at $10,712 can be imputed to wife. Therefore, she is earning $45,171.68 per year. Subtracting her basic living expense for the year which was allocated by the court at $30,000, the remainder is $15,171.68. She has $14,448 per year in credit card debt. Subtract these amounts and the remainder is $723.68.
[¶ 20] Given all of the numbers that were provided to the trial court, it did not abuse its discretion in allocating marital debt. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NO. THREE [¶ 21] "THE TRIAL COURT'S SPOUSAL SUPPORT ORDER AND AWARD OF ATTORNEY FEES IS SO INEQUITABLE IN BOTH THE AMOUNT AND THE COURT ORDERED TAX TREATMENT, AS TO RENDER IT AN ABUSE OF DISCRETION AND CONTRARY TO LAW."
 [¶ 22] Husband was ordered to pay $2,000 a month for 48 months in spousal support. The trial court ordered this award to put the wife and husband in an approximately equal state as they had been when they were married. The court stated that the length of spousal support was calculated to help with raising the child and to give wife the opportunity and the incentive to find full-time employment. 10/31/01 J.E. Husband argues that the court's award of spousal support is inequitable in light of the factors set forth in R.C. 3105.18(C) as applied to the facts of this case and his financial situation. He states that this statement is evidenced by his employer's failure to withhold the correct amount from his paycheck because the total sum ordered to be withheld exceeds the maximum percentage allowed by law.
[¶ 23] The trial court considered the factors enumerated in R.C.3105.18(C). Husband and wife were married for 18 years. R.C.3105.18(C)(1)(e). At the time of the divorce husband was 51 years old, while wife was 45 years old. R.C. 3105.18 (C)(1)(c). Both were in relatively good physical condition. R.C. 3105.18(C)(1)(c). Both parties are educated and do have some earning ability. Husband has a high school and trade school education and his earning ability was around $88,000 to $100,000 a year. R.C. 3105.18(C)(1)(b), (h). Wife has a college degree in Criminal Justice, however she has only worked a couple part-time jobs of short duration in that field during the 18 year marriage. R.C.3105.18(C)(1)(h), (k). No evidence was presented as to her earnings from those jobs or her potential earning ability at her age and in her field. The parties have one daughter who at the time of the divorce was a sophomore in high school. Both parties agreed wife would stay at home to raise the child. (Tr. 334). As such, wife has a lost income production capacity due to her marital duties. R.C. 3105.18(C)(1)(m). The trial court concluded wife no longer needs to stay at home to care for the minor child. R.C. 3105.18(C)(1)(f). Therefore the trial court, not knowing the earning potential of wife, imputed minimum wage as her income. R.C. 3105.18(C)(1)(b). Neither party contributed to the education of the other party. R.C. 3105.18(C)(1)(j).
[¶ 24] The trial court considered the income and debts of the marriage in computing spousal support. The trial court considered the husband's income, the possible minimum wage income of wife and the distribution of the property and debt during the divorce to determine the spousal support award. R.C. 3105.18(C)(1)(a), (i). Since wife has no job, she has no retirement benefits, however, husband's retirement benefits were equally divided between the parties. R.C. 3105.18(C)(1)(d). The trial court also considered the standard of living the parties were accustomed to during the marriage which was an above average standard of living. R.C. 3105.18(C)(1)(g). However, viewing the debt, the transcript, and the court order, it becomes abundantly clear that the parties lived beyond their means.
[¶ 25] The trial court also considered the tax consequences for both parties of the spousal support award. R.C. 3105.18(C)(1)(l). The trial court concluded that allowing husband to claim the payment of spousal support on his income tax return, which would require wife to pay taxes on the award, would be inequitable. 8/31/99 J.E. The trial court reasoned that the amount of spousal support would have to be raised if it was taxable. 8/31/99 J.E.
[¶ 26] The determination of the reasonable and appropriate amount of spousal support is a matter within the discretion of the Domestic Relations Court. Glick v. Glick (1999), 133 Ohio App.3d 821. Since we have held under the second assignment of error that husband can meet his financial obligations, given all of the above factors, the amount of spousal support was not inequitable or against the manifest weight of the evidence. Furthermore, the trial court retained jurisdiction of the spousal support order to modify it if circumstances arose requiring a modification. 8/31/99 J.E. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NO. FOUR [¶ 27] "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO CONSIDER THE APPELLANT'S SUBSTANTIAL INDEBTEDNESS AND OTHER COURT ORDERED OBLIGATIONS AND PROVIDE FOR A CHILD SUPPORT DEVIATION IN CALCULATING CHILD SUPPORT PURSUANT TO ORC [sic] 3113.215."
 [¶ 28] At trial, the parties stipulated to basic child support calculations given husband's income history and imputing minimum wage to wife. They stipulated to $871.64 per month in child support. The court ordered this amount paid in child support.
[¶ 29] Husband argues that the stipulation was subject to his supplemental request for deviation due to the party's substantial debt. He claims that along with the $29,423.52 per year in debt that he is required to pay, he must also pay $24,000 non-tax deductible spousal support per year. The trial court stated it did not believe it was equitable to the child to change the child support based on husband's complaint that he cannot pay the debts of the marriage that he and wife incurred. 10/31/01 J.E.
[¶ 30] Husband wants a downward departure from the child support award based upon his substantial indebtedness. As stated earlier, husband can meet his financial obligations under these orders. No other facts exist to support a downward departure from the agreed upon child support award. Therefore, this assignment of error is also without merit.
[¶ 31] For the foregoing reasons, the decision of the trial court is hereby affirmed.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.